**BURNS & ROE, INC., Plaintiff,**

v.

**CENTRAL MAINE POWER COMPANY and Hartford Steam Boiler Inspection and Insurance Company, Defendants.**

Civ. No. 86–0326–P.

United States District Court, D. Maine.

April 27, 1987.

Harrison L. Richardson, Elizabeth G. Stouder, Portland, Me., for plaintiff.

James D. Poliquin, Jotham Pierce, Jr., Portland, Me., F. Timothy McNamara, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

This action for declaratory judgment has been brought by Plaintiff Burns & Roe, Inc. (BRI) against Defendants Central Maine Power Company (CMP) and Hartford Steam Boiler Inspection and Insurance Company (Hartford). CMP has filed a cross-claim for declaratory judgment against Hartford, and all three parties have filed motions for complete or partial summary judgment on the claims set out in Counts I and II of the original complaint. In addition, BRI recently filed a motion to amend the complaint to add Count III naming Foster Wheeler Corporation (Foster Wheeler) as an additional defendant in this suit and setting out an indemnification claim against it. That claim has a basis distinct from those pleaded in Counts I and II against CMP.

This action arises out of the desire of the various parties to clarify their rights as they relate to another lawsuit scheduled to be tried by this Court in June. That suit is being litigated by CMP and its insurer, Hartford, against Foster Wheeler for damages that resulted from the intrusion of salt water into the feedwater cycle of a condenser at CMP's Wyman IV Power Station in Yarmouth, Maine. In that action, Foster Wheeler has filed a cross-claim against BRI seeking contribution, indemnification, or apportionment for any responsibility BRI shares for the damage incurred by the plaintiffs in that suit.[1] BRI provided engineering services and managed the construction of the generating unit in question; Foster Wheeler participated in the construction of the condenser for the generating unit.

---

1. BRI was initially named as a codefendant in the suit, but prevailed on a motion for summary judgment in which it asserted that it had already paid CMP the full amount that that party could recover from it in light of a contractual limitation on liability included in their agreement. *Central Maine Power Co. v. Foster Wheeler Corp.*, —— F.Supp. —— No. 83–0056–P, slip op. (D.Me. April 15, 1986).

## I. *BRI's Motion to Amend Its Complaint to Add Foster Wheeler as a Defendant in its Action for Declaratory Judgment*

■ Under Federal Rule of Civil Procedure 15(a), leave to amend a pleading shall be freely given when justice so requires. This mandate is to be heeded. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, motions to amend are not to be mechanically approved; they may be denied in order to avoid undue delay, prejudice to the opposing party, or for a variety of other reasons enumerated in *Foman.*

BRI has argued that the Court should address its motion for summary judgment and clarify the rights of the various parties as far in advance of the June trial as possible. The Court has difficulty reconciling BRI's pursuit of "expeditious action" by the Court with BRI's own languid conduct in bringing this motion before the Court on the very eve of the Court's expedited action, jointly sought by all parties, including BRI, on Counts I and II. BRI's motion to amend is based on language contained in a contract document dated December 7, 1973.[2] The underlying litigation has been before the Court since 1983. BRI filed its complaint in this action on October 15, 1986. BRI has offered no explanation as to why it is at this late date asserting, for the first time, a claim based on contract language that it has been familiar with for more than a decade.

■ Notwithstanding these concerns, the Court concludes that it should grant the motion to amend. The Court finds that the issues posed by the new Count III are primarily legal ones, and that little or no additional discovery will be necessary to posture them for adjudication. That being the case, the motion can be granted without causing delay or prejudice to the opposing parties. The motion is allowed only because the Court is fully satisfied that BRI's motion raises new issues, distinct from those previously postured by the motions now ripe for decision by the Court herein, and that the motion may be granted without impeding the Court's ability to immediately address the other issues now pending for decision, as previously requested by *all* the parties.

## II. *BRI's Assertion That CMP is Contractually Obligated to Indemnify It for Damages, Expenses, Legal Fees, Judgments or Approved Settlements Arising Out of the Condenser Action*

Section 16(D)(xiii) of the contract between CMP and BRI provides that CMP will pay the following expenses incurred by BRI:

> All losses, damages and expenses, including legal fees (but not including losses, damages and expenses due to the negligent or wrongful acts of Engineer's officers, Engineer's Project Manager or Engineer's Resident Construction Manager, and lawsuits, if any, between the parties hereto), and payment of all judgments or settlements (as approved by Owner), which are actually suffered by Engineer in the course and directly as a result of performing the services, to the extent that such losses, damages and other expenses are not compensated for by insurance; provided that Engineer shall have maintained in full force and effect the insurance coverage required under Section 7 hereof.

■ BRI has argued that under this clause, CMP is required to indemnify it for any judgments against it plus attorneys' fees. Under Maine law, which is here applicable, clauses which purport to indemnify a party for damages incurred due to its own negligence are looked upon with disfavor and are construed strictly against reaching such an interpretation. *Emery Waterhouse Co. v. Lea,* 467 A.2d 986, 993 (Me.1983).

> It is only where the contract on its face by its very terms clearly and unequivocally reflects a mutual intention on the part of the parties to provide indemnity

---

2. The pertinent passage is on page two of a document entitled "Schedule E—Exceptions to Contract Documents." BRI states in its motion that the terms of Schedule E became part of its contract with Foster Wheeler.

for loss caused by negligence of the party to be indemnified that liability for such damages will be fastened on the indemnitor, and words of general import will not be read as expressing such an intent and establishing by inference such liability.

*Id.*

The clause in question in *Emery-Waterhouse* required indemnification against *"any and all claims"* arising out of *"any occurrence,"* and yet the Law Court found that because indemnification for a party's own negligence was not specifically included, such an intendment would not be ascribed despite the facially all-encompassing nature of the clause. *Id.*

■ The provision in question in the current case does not contain any clear and unequivocal statement that CMP will indemnify BRI for damages arising out of BRI's own negligence. In fact, it specifically excludes any indemnification for expenses arising out of negligence on the part of named employees of BRI. Under *Emery Waterhouse,* it is clear that anything less than an explicit statement clearly manifesting an intent to indemnify against the indemnitee's own negligence will not be sufficient to create an obligation to do so. BRI argues that because the provision states that CMP will not indemnify BRI for damage caused by the negligence of its officers, project manager or resident construction manager, the Court should *infer* that the parties intended that CMP would indemnify BRI for damage caused by those BRI employees who are not specifically named. The Court concludes, however, that such an inference is not compelled by the context and, in fact, is precluded by the strictures of *Emery Waterhouse.*

Foster Wheeler will recover against BRI only if it is able to establish that BRI's negligence contributed to the damage sustained by CMP. Therefore, should damages be assessed against BRI, they will arise directly out of a finding of negligence on the part of BRI and will be excluded from the indemnification agreement between BRI and CMP. Similarly, should BRI be found to have been negligent, all

legal expenses incurred in defending itself would be excluded from its indemnification agreement with CMP because the need for legal assistance would have arisen as a result of a negligent act by BRI.

III. *The Contractual Limitation of Liability Agreed Upon by CMP and BRI is of No Legal Consequence in Actions Between Hartford and Foster Wheeler or Foster Wheeler and BRI*

■ In their 1972 contract CMP and BRI agreed that BRI's liability to CMP "with respect to the services performed hereunder shall be limited to 50% of the amount of the fee earned under Section 17 hereof." BRI has already paid a sum equal to fifty percent of its fee to CMP in settlement of another action, and the Court has previously ruled that such payment exhausted BRI's liability to CMP for any damages arising out of the performance of the contract. *Central Maine Power Co. v. Foster Wheeler Corp.,* No. 83-0056-P, slip op. (D.Me. April 15, 1986). BRI now contends that that provision should also shield it from having to make any payment of damages to Foster Wheeler, should the two be found to be joint tortfeasors whose combined negligence contributed to the damages suffered by CMP. The Court does not agree. It is clear under Maine law that a tortfeasor who cannot be adjudged directly liable to an injured party can still be required to pay contribution to a joint tortfeasor who is found directly liable. *See Emery Waterhouse,* 467 A.2d at 997. BRI negotiated a limitation on liability with CMP, not with Foster Wheeler, and Foster Wheeler's right of contribution can in no way be limited by a contract to which it was not a party.

■ Similarly, there is no legal support for BRI's creative suggestion that any award to Hartford or CMP should simply be discounted by the percentage of fault allocated to BRI. CMP signed a contract with BRI that included a clause limiting BRI's direct liability to CMP; it did not agree to indemnify BRI against liability imposed upon it in third-party actions in favor of third parties. BRI is asking the Court to grant it a benefit beyond those

that it bargained for, as memorialized by the contract language. The Court declines to do so, finding that it would be highly inequitable to read into the contractual liability limitation in favor of BRI an *indemnification obligation* on the part of CMP that is nowhere hinted at by the terms of the contract.

Accordingly, BRI's motion to amend its complaint is *GRANTED* and, in response to the pending motions for summary judgment on Counts I and II of the Amended Complaint, the Court hereby *DECLARES* the following rights of the parties on the claims generated on those counts of the Amended Complaint: [3]

(1) Section 16(D)(xiii) imposes no obligation upon CMP to indemnify BRI for any losses, damages, or expenses, including legal fees, that result from BRI's own negligence. CMP has no indemnification obligation to BRI in respect to any award of contribution that Foster Wheeler may obtain against BRI. The limitation on liability agreed to by CMP and BRI, and set out in Section 35 of their contract, in no way limits CMP's or Hartford's rights against Foster Wheeler or Foster Wheeler's rights against BRI.

(2) Foster Wheeler is not entitled to discount any damages assessed against it in favor of Hartford or CMP by the proportion of fault, if any, attributed to BRI's negligence in causing such damage.

(3) BRI must pay to Foster Wheeler the full amount of contribution, if any, assessed against it.

So ORDERED.

---

**3.** The Court in no way adjudicates, and intimates no opinion upon, any claim that may be asserted under Count III of BRI's complaint as it is now amended. Count III of BRI's Amended Complaint asserts a claim for contractual indemnification *against Foster Wheeler* arising under provisions of Foster Wheeler's proposal to CMP alleged to have become part of the General Contract between CMP and Foster Wheeler, namely, "Schedule E—Exceptions to Contract Documents." This claim is distinct from the claims arising under Counts I and II of the Amended Complaint, which are bottomed upon the provisions of Section 35 of *the contract between BRI and CMP.* Thus, that claim and the issues generated by it may await adjudication until responsive pleadings and discovery in respect thereto have been completed.