DIAMOND INTERNATIONAL CORPORATION

v.

SULLIVAN AND MERRITT, INC.

Supreme Judicial Court of Maine.

Argued May 1, 1985.

Decided June 6, 1985.

Berman, Simmons & Goldberg, Paul F. Macri (orally), Jack H. Simmons, Lewiston, for plaintiff.

Cuddy & Lanham, Kevin M. Cuddy (orally), Bangor, for Sullivan and Merritt.

McTeague, Higbee, Libner, Reitman & MacAdam, Maurice A. Libner, Brunswick, for Roger Ross, et al.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The defendant and third-party plaintiff, Diamond International Corporation (Diamond), appeals from the judgment of the Superior Court, Kennebec County, holding that a joint tortfeasor is not entitled to a so-called *pro tanto* reduction of the judgment or cancellation of an assenting employer's statutory lien for compensation paid under the Workers' Compensation Act (Act). Diamond also appeals from the judgment entered in favor of the third party defendant, Sullivan & Merritt (S & M), on S & M's motion for a directed verdict on the issue of whether an indemnification agreement existed between the two companies. Because we conclude that the policies of the Act preclude the adoption of the *pro tanto* theory and permit indemnification only where an employer clearly and specifically waives immunity, we affirm the judgment.

## I.

Roger Ross was the foreman of the crew of four S & M carpenters hired to help rebuild a portion of Diamond's fire-damaged wooden products plant in Oakland, Maine. During the early morning hours of December 11, 1981, a forklift driven by a Diamond employee struck the seven-foot high scaffolding upon which Ross and his crew were working. Ross was thrown to the ground and suffered severe wrist injuries.

On February 17, 1982, Ross and his wife filed a complaint charging Diamond with negligence. Count I sought recovery for Roger Ross for medical expenses, lost earning capacity, pain and suffering, and loss of enjoyment of life. Count II sought recovery for Doris Ross for loss of consortium.

On March 15, 1982, Diamond filed a third-party complaint against S & M. Count I alleged that S & M's negligence was the cause of the plaintiff's injuries. It further alleged that S & M had made payment to Ross of workers' compensation benefits under Title 39 M.R.S.A. and that, pursuant to section 68, S & M had a lien for the value of any benefits paid to the plaintiff on any damages he might collect from Diamond.

Diamond sought to have any judgment recovered by Ross against it reduced by the amount of the lien or, in the alternative, a judgment in its favor against S & M in the amount of the lien. Diamond also asked for declaratory relief ordering S & M to pay any future workers' compensation benefits directly to Diamond. Count II sought indemnification from S & M on the basis of an indemnification provision in the construction contract between the parties. The case came to trial on August 13, 1984.

As a part of its special verdict, the jury found the total damages of Roger Ross to be $271,000 and those of Doris Ross to be zero. The jury deducted $22,500 from the damage total as attributable to Ross's own negligence and awarded him $248,500. The jury also found that Diamond was 90% negligent and S & M 10%. After the jury returned a supplemental verdict finding that no S & M employee other than Ross had been negligent, S & M renewed a motion to dismiss Count I of the third-party complaint in the form of a motion for judgment notwithstanding the verdict, alleging *Roberts v. American Chain & Cable Co., Inc.*, 259 A.2d 43 (Me.1969) barred any recovery outside the Act from an employer on the basis of injuries sustained by an employee. The Court granted the motion.

Following the return of the jury's initial verdict, the Court also granted S & M's motion for a directed verdict on Count II of the third-party complaint. Diamond appeals.

## II.

Under the Act, employers who provide workers' compensation coverage for their employees are immunized from suits arising out of workers' injuries. Assenting employers are "exempt from civil actions because of such injuries...." 39 M.R.S.A. § 4 (Pamph.1984–1985). Moreover, an employee who receives compensation "shall be held to have waived his right of action at common law to recover damages for the injuries sustained by him...." 39 M.R.S.A. § 28 (1978).

When a third party is allegedly liable for an employee's work-related injury, the employee may choose either to claim workers' compensation benefits or to sue the third party to recover damages. 39 M.R.S.A. § 68 (Pamph.1984–1985). An employer who pays benefits to an injured employee has a lien for the amount of those payments on any damages the employee recovers from a third party. *Id.* If the employee recovers damages, he "shall repay to the employer ... out of the recovery against the third person, the benefits paid to him by the employer...." *Id.* If an injured employee fails to pursue his remedy against a third party within thirty days after written demand by an employer, the employer is subrogated to the rights of the injured employee. Under the *pro tanto* theory advocated here by Diamond, it is argued that third-party liability ought to be reduced or a set off be allowed in the amount of an assenting employer's lien under 39 M.R.S.A. § 68.

In *Roberts v. American Chain & Cable*, 259 A.2d 43 (Me.1969), we held that "[a]n assenting employer ... has full immunity ... from any civil action because of an industrial injury, including exemption from any duty of contribution to a third-party tortfeasor whose concurrent negligence

with that of the employer has caused the accident." *Id.* at 49. We acknowledged the force of the equitable argument that a third-party wrongdoer, otherwise entitled to contribution, ought not to be responsible for the entire damages simply because of the fortuity of his having been found concurrently negligent with an assenting employer. *Id.* at 48. Still, we declined to frustrate the purposes of the Act by importing this equitable doctrine into the legislative scheme regulating industrial injuries. *Id.* We observed that under the Act "employers have rights and they also are entitled to rely on the certainty of the compensation to be paid and the amount of the services to be rendered." *Id.* at 49. We further noted that,

> [t]o extend the employer's liability beyond the scope of the compensation act under the *guise* of the application of equitable principles of contribution in favor of a joint tortfeasor would be a perversion of the act contrary to the intendment of legislative policy. The intent of the statute was not to burden the industries of the State beyond the scope of the act as defined by the lawmakers.

*Id.* In *Roberts,* we made clear that employer immunity granted in return for certain and speedy relief, without regard to fault to those suffering an industrial injury was a critical feature of the bargain struck by the Act. More recently, we have noted "the broad scope of the immunity conferred by section 4" of the Act as defined in *Roberts. McKellar v. Clark Equipment Co.,* 472 A.2d 411, 414 (Me.1984).

In the instant case, Diamond maintains that if the bargain underlying the Act were to be struck today, it would almost certainly vary significantly from the one made in 1915. Recent developments in tort law, especially the adoption of the doctrine of comparative negligence, have done much to mitigate the harsh effect of tort principles on an employee's chances of recovering damages from his employer. Thus, if such legislation were contemplated in the present decade, the *quid pro quo* rationale underlying the original act would be substantially diminished. *See* Comment, *New Policies Bearing on the Negligent Employer's Immunity From Loss-Sharing,* 29 Me.L.Rev. 243 (1978). Accordingly, Diamond asks that we read *Roberts* as only prohibiting attempts by third-party tortfeasors to secure unlimited contribution from an assenting employer. Diamond explains that the goal of the *pro tanto* theory is not to seek unlimited contribution, but merely to extinguish the employer's lien, in no way extending the employer's specific liability under the Act. The policies of the Act are not undercut—the employer would never pay more in any individual case than he would otherwise be responsible for under the Act—while at the same time the financial liability for the employee's injury is apportioned more fairly between the responsible parties. Simply put, Diamond argues that an employer who is partly or wholly responsible for the injury ought not be permitted to retain part or all of the proceeds of the lien.

■ We acknowledge that this newly refined equitable argument may have an even more tempting appeal than it had sixteen years ago when we first rejected it in *Roberts.* Again, however, we decline to admit through the back door notions of fault and liability deliberately excluded from consideration by the workers' compensation system. Diamond may be correct in its assertion that the *pro tanto* theory does not extend the employer's *specific* liability under the Act. Nevertheless, preventing recoupment of benefits paid when it is determined that some fault is attributable to the employer increases an employer's *general* liability. To permit a third party non-employer tortfeasor to recover from the employer up to the amount of the employer's lien would necessarily upset the legislative compromise that lies at the heart of the Act.

The vast majority of jurisdictions provide an employer with blanket immunity from actions for contribution. 2A Larson, *The Law of Workmen's Compensation* § 76.-

91(a) (1983) (total immunity from contribution without regard to employer's fault "is definitely the majority decisional rule, and has if anything, been increasing in strength"); 100 A.L.R.3d 350, 355 (1980) (noting the "nearly unanimous" view that contribution from the employer is barred). Maine follows the majority rule. *Roberts v. American Chain & Cable,* 259 A.2d at 47; 2A Larson, *The Law of Workmen's Compensation* § 76.20. We now join those jurisdictions that have explicitly rejected one or more of the various forms of *pro tanto* contribution sanctioned in a slim minority of jurisdictions. *See, e.g., Williams v. Weiler & Co.,* 498 F.Supp. 917 (S.D.Iowa 1979) (applying Iowa law, refuses to follow holding in *Lambertson v. Cincinnati Corp.,* 312 Minn. 114, 257 N.W.2d 679 (Minn.1977)); *Stroud v. Dorr-Oliver, Inc.,* 542 P.2d 1102 (Ariz.1975) (rejects minority position; right of employer to enforce lien not dependent on employer's freedom from concurrent negligence); *Correia v. Firestone Tire & Rubber Co.,* 446 N.E.2d 1033 (Mass.1983) (rejecting proposed "equitable" modifications set forth in *Liberty Mutual Insurance Co. v. Westerlind,* 374 Mass. 524, 373 N.E.2d 957 (Mass. 1978), inequities must be resolved by legislature); *Schweizer v. Elox Division of Colt Industries,* 70 N.J. 280, 359 A.2d 857, 860 (N.J.1976) ("[i]t is ... unthinkable that if the intent of the draftsmen had been as now contended for by the appellants there would not have been an express exception in the statute for the contingency of employer negligence"); *Mulder v. Acme-Cleveland Corp.,* 95 Wis.2d 113, 290 N.W.2d 276 (Wisc.1980) (refusal to alter "delicate balance" struck by legislature); *cf. Ceco Corp. v. Coleman,* 441 A.2d 940 (D.C.1982) (rejection of so-called "*Murray* credit," *Murray v. United States,* 405 F.2d 1361 (D.C.Cir.1968)).

We have repeatedly observed that the law of workers' compensation is solely statutory, and we have cautioned against engrafting judicially created doctrines of restitution upon the statutory scheme. *See, e.g., Pelotte v. Purolator Courier Corp.,* 464 A.2d 186, 188 (Me.1983). We note that in the sixteen years since the *Roberts* decision, the Legislature has declined to narrow our holding in any way. Where the Legislature has not seen fit to act, we are unable to justify the judicial adoption of the *pro tanto* theory and thereby inject a form of contribution into a statutory framework that expressly immunizes the employer.[1]

### III.

In *Roberts,* we determined that the Act bars a third-party tortfeasor from impleading an assenting employer for the purpose of obtaining contribution in the event the third-party is held liable for damages claimed in the main suit. We specifically noted, however, that in certain circumstances a third-party tortfeasor may implead an assenting employer who had agreed to indemnification:

> We do not intimate however that a third-party tortfeasor may not implead an assenting employer under certain conditions. The assenting employer may have obligated himself to indemnify the third-party tortfeasor by an express contract of indemnity.

*Roberts v. American Chain & Cable Co.,* 259 A.2d at 51.

Count II of Diamond's complaint alleged that "[b]y contract, the Third Party Defendant, Sullivan & Merritt, Inc., has agreed to indemnify and save [Diamond] harmless against all loss, liability, cost and expense which result in any way from the acts or omission of the Third-Party Defend-

---

1. S & M also argues that even if the doctrine of *pro tanto* contribution were recognized in Maine, contribution would be inequitable on the facts of this case, where the only negligence attributable to the employer is that of the plaintiff/employee, whose recovery against a third party has already been reduced for his comparative negligence. Because of our holding that the policies of the act preclude the adoption of the *pro tanto* theory, we express no opinion on this issue.

ant, its agents, employees or subcontractors." Following the jury's initial verdict the Court granted S & M's motion for a directed verdict, concluding there was "no evidence that there was any meeting of the minds on that issue or any contractual agreement of indemnification."

A verdict should be directed when a contrary verdict cannot be sustained on the evidence. 1 Field, McKusick and Wroth, *Maine Civil Practice* § 50.2 at 663 (2d ed. 1970). The evidence before the court pertinent to a possible indemnification agreement between the parties was as follows: (1) a December 22, 1981, purchase order, (2) three letters from S & M to Diamond, dated December 7, 16, and 17, 1981, and (3) the testimony of one of S & M's owners, John Merritt. The December 7 letter appears to confirm the existence of an oral contract between the parties as early as December 3, 1981, "for removal and replacement of materials damaged in the recent fire." The injury to millwright Ross occurred early on the morning of December 11, 1981. The court concluded that insufficient evidence existed to allow a jury to find that the parties' oral agreement contained the indemnification provision memorialized in the December 22, 1981, purchase order. However, on the facts of this case, even if the scope of the oral agreement is broad enough to include the purchase order clause relating to indemnification, as Diamond asserts, a verdict in its favor cannot be sustained on this evidence.

■ We hold that the purported indemnification provision in the purchase order could never be sufficient to permit a party to circumvent the employer immunity aspect of the Act. By so deciding, we follow the example of the Supreme Court of Washington, which has articulated strict requirements for a valid waiver of employer immunity by indemnification agreement:

> We hold that an indemnity clause of this type is enforceable only if it clearly and specifically contains a waiver of the immunity of the workers' compensation act, either by so stating or specifically stating that the indemnitor assumes potential liability for actions brought by its own employees.

*Brown v. Prime Construction Co., Inc.*, 102 Wash.2d 235, 684 P.2d 73, 75 (1984). Employing such standards when interpreting indemnity provisions will safeguard from relinquishment the statutory immunity granted to employers, except in those circumstances where that immunity is explicitly waived.

We note that, in the instant case, the purchase order's indemnification language is found on the back of the form, under the obfuscatory title, "Insurance by Seller." The language does not contain a clear waiver by S & M of the employer immunity it enjoys under 39 M.R.S.A. § 4 or an explicit statement that S & M assumes liability for actions brought by its employees. Lacking the clarity and the specificity necessary to circumvent the statutory immunity provided to the employer under the Maine Act, this "indemnification agreement" must of necessity fail. The directed verdict was properly granted.

The entry is:

Judgment affirmed.

All concurring.