**Mark A. FOWLER and Famah Fowler, Plaintiffs,**

v.

**BOISE CASCADE CORPORATION, Defendant and Third–Party Plaintiff,**

v.

**I.M.C. OF VIRGINIA and Commercial Union Insurance Company, Third–Party Defendants.**

**Civ. No. 89–0086–P.**

United States District Court, D. Maine.

June 12, 1990.

---

672

Joseph J. Cloutier, Rockport, Me., Paul R. Dumas, Rumford, Me., for plaintiffs.

James M. Bowie, Portland, Me., for Boise.

Harold Friedman, Portland, Me., for Commercial Union.

Frederick C. Moore, Portland, Me., for I.M.C.

## MEMORANDUM OF DECISION AND ORDER GRANTING THIRD–PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

GENE CARTER, Chief Judge.

Plaintiffs brought this diversity action to recover damages allegedly caused by Defendant's negligence. Defendant and Third–Party Plaintiff (Boise) brought a third-party claim against both I.M.C. of Virginia (I.M.C.) and Commercial Union Insurance Company (CUIC). Boise alleges that the indemnity clause, insurance procurement clause, and subrogation clause contained in its contract with I.M.C. require Third–Party Defendants to indemnify Boise against Plaintiffs' claim, to provide Boise with the benefits of CUIC's workers' compensation lien, and to pay Boise's attorney's fees. Both Boise and Third–Party Defendants have filed Motions for Summary Judgment.[1] Because the contested clauses do not, as a matter of law, bind either Third–Party Defendant, the Court will grant Third–Party Defendants' Motion for Summary Judgment.

For the purposes of these cross motions for summary judgment, the Court finds the following facts to be uncontroverted. Boise hired I.M.C. to perform various painting jobs within its paper mill located in Rumford, Maine. Mark A. Fowler, an employee of I.M.C., was injured while working at Boise's plant when he apparently stepped in a hole in the floor and fell. Mr. Fowler received workers' compensation benefits from I.M.C. through CUIC, I.M.C.'s insurance carrier. The contract between I.M.C. and Boise contained an indemnity clause, an insurance procurement clause, and a subrogation clause. Boise argues that the indemnity and insurance procurement clauses require I.M.C. to indemnify Boise. In addition, Boise maintains that the subrogation clause requires I.M.C. and CUIC to provide Boise with any workers' compensation lien they may hold.

## DISCUSSION

A motion for summary judgment must be granted if:

> [T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The moving party must adumbrate an absence of evidence to support the nonmoving party's case in order to shift the burden of production to the nonmoving party. *Brennan v. Hendrigan*, 888 F.2d 189, 191–92 (1st Cir.1989). Furthermore, the interpretation of an unambiguous contract is a matter of law, not fact, and is, therefore, a matter that may be decided on a motion for summary judgment.[2] *Triple A Baseball Club v. Northeastern Baseball*, 832 F.2d 214, 220 (1st Cir.1987); Fed.R.Civ.P. 56(c).

### *Indemnity Clause*

Count II of Boise's Third–Party Complaint alleges that the indemnity clause of the contract binds I.M.C. to indemnify Boise.[3] I.M.C. argues that Boise's claim is

---

1. In particular, Boise has filed motions for summary judgment against I.M.C. on Count II of its Third–Party Complaint and against CUIC on Count III of its Third–Party Complaint. I.M.C. has filed a Motion for Summary Judgment against Boise on all counts of Boise's complaint. CUIC has not filed a Motion for Summary Judgment.

 Because CUIC's potential liability is necessarily intertwined with that of I.M.C., the Court, in granting I.M.C.'s Motion for Summary Judg-

ment, will grant a motion for summary judgment in favor of CUIC *sua sponte.*

2. It is also a question of law whether a contract clause is ambiguous. *Triple A Baseball Club*, 832 F.2d at 220. The Court finds that the three clauses contested in this suit are not ambiguous and that their interpretation is a matter of law.

3. The indemnity clause reads as follows:
 16.1 *Contractor's Indemnity.* Contractor shall indemnify, save and hold Boise Cascade

barred by the immunity provisions of the Maine Workers' Compensation Act.[4] I.M.C. also maintains that, under Maine common law, the indemnity clause does not indemnify Boise against its own negligence. The Court finds that both Maine common law and statutory law support I.M.C.'s position.

Section 4 of the Maine Workers' Compensation Act provides that:

> [a]n employer who has secured the payment of compensation ... is exempt from civil actions ... involving personal injuries sustained by an employee arising out of and in the course of his employment or for death resulting from those injuries.

39 M.R.S.A. § 4.[5] The Maine Law Court has consistently upheld the employer's immunity from suit, stating that "employer immunity granted in return for certain and speedy relief, without regard to fault ... was a critical feature of the bargain struck by the Act." *Diamond International Corporation v. Sullivan and Merritt, Inc.*, 493 A.2d 1043, 1046 (Me.1985); *Roberts v. American Chain & Cable Company*, 259 A.2d 43 (Me.1969). Recognizing the delicate compromise that the Maine Legislature struck between employers and employee safety, the Law Court found that "[t]he intent of the statute was not to burden the industries of the State beyond the scope of the Act as defined by the lawmakers." *Roberts*, 259 A.2d at 49. Pursuant to this policy, the Law Court has recognized contractual indemnification only under very limited circumstances.

In *Diamond*, The Maine Law Court held that in order to "safeguard from relinquishment the statutory immunity granted to employers," employers could not be held liable "except in those circumstances where [their] immunity is explicitly waived." *Diamond*, 493 A.2d at 1048. The facts in *Diamond* make clear the Law Court's position. The *Diamond* court held that an indemnity clause was not sufficiently explicit to waive an employer's immunity although the employer agreed to

> indemnify and save [the contractor] harmless against all loss, liability, cost and expense which result in any way from the acts or omission of the [employer], its agents, employees or subcontractors.

*Diamond*, 493 A.2d at 1048.

The indemnity clause contained in Boise's contract with I.M.C. is similarly general and, therefore, is not sufficiently explicit to waive I.M.C.'s statutory immunity. Thus, pursuant to Maine statutory law, as interpreted by the Maine courts, the indemnity

---

harmless from and against any and all loss, damage, expense, responsibility and/or liability for all loss or injury of any kind or nature (including death) to all persons or property, or for claims therefor, whether or not Boise Cascade has suffered actual loss, damage or expense, resulting from, pertaining to or arising out of performance of this Contract by Contractor, its employees, agents, assigns or subcontractors, including all attorney's fees incurred by Boise Cascade in enforcing the provisions of this indemnity or in connection with any claim or demand anticipated or asserted against Boise Cascade which may be covered under the terms of this indemnity. The Contractor shall assume, on behalf of Boise Cascade, the defense of any law suit or administrative proceeding which may be brought against Boise Cascade upon any such claim, demand, right, action or cause of action, and pay on behalf of Boise Cascade, upon its demand, the amount of any judgment that may be entered against Boise Cascade in connection therewith. This indemni-

ty shall not cover losses caused by Boise Cascade's sole negligence.
General Conditions of Contract, Article XVI.

4. I.M.C. also argued that it lacked the capacity to be sued because Maine law permits actions against dissolved corporations only if the action is commenced within two years after the date of dissolution. 13-A M.R.S.A. § 1122(1). However, because I.M.C. is a Virginia corporation, its capacity to be sued must be determined under Virginia law. Fed.R.Civ.P. 17(b); *See, e.g., Abington Heights School District v. Speedspace Corp.*, 693 F.2d 284 (3d Cir.1982) (court applied Fed.R.Civ.P. 17(b) in diversity case), *Donald Manter Co. v. Davis*, 543 F.2d 419 (1st Cir.1976) (court applied Fed.R.Civ.P. 17(b) in diversity case). Under Virginia law, I.M.C. has the capacity to be sued. Va.Code § 13.1-755; *United States v. Village Corporation*, 298 F.2d 816, 818 (4th Cir.1962) (court applying Virginia law).

5. Defendant does not contest that I.M.C. properly secured payment under the Act and, therefore, falls within the provisions of section 4.

clause does not bind I.M.C. to indemnify Boise for Boise's alleged negligence.

■ The indemnity clause also fails to bind I.M.C. under Maine common law. Indemnification clauses that purportedly indemnify a party against injuries caused by that party's own negligence "are looked upon with disfavor by the courts, and are construed strictly against extending the indemnification to include recovery by the indemnitee for his own negligence." *Emery Waterhouse Company v. Lea*, 467 A.2d 986, 993 (Me.1983); *Burns & Roe, Inc. v. Central Maine Power Company*, 659 F.Supp. 141, 143–44 (D.Me.1987). The Maine Law Court stated that:

[i]t is only where the contract on its face by its very terms clearly and unequivocally reflects a mutual intention on the part of the parties to provide indemnity for loss caused by negligence of the party to be indemnified that liability for such damages will be fastened on the indemnitor, and words of general import will not be read as expressing such an intent and establishing by inference such liability.

*Emery*, 467 A.2d at 993. Thus, in *Emery*, the Law Court found that a lease that indemnified against any and all claims arising from or out of any occurrence on the leased premises did not compel the inference that the parties meant to include damage from the indemnitee's own negligence. *Id.*

The indemnity clause in this suit contains the same general language that the Maine Law Court, in *Emery*, found insufficient to indemnify a party against its own negligence. Thus, under either the common law doctrine espoused in *Emery* or the statutory doctrine elucidated in *Diamond*, the indemnification clause contained in Boise's contract with I.M.C. does not require that I.M.C. indemnify Boise for Boise's alleged negligence.[6] I.M.C.'s Motion for Summary Judgment on Count II of Boise's Third–Party Complaint will, therefore, be granted.

### Procurement of Insurance Clause

■ Count I of Boise's Third–Party Complaint alleges that I.M.C.'s contractual agreement to procure insurance obligated I.M.C. to indemnify Boise.[7] Boise maintains that because an insurance procurement clause is distinct from an indemnity clause, Maine policies regarding indemnity are inapplicable.[8] The Court finds that the

---

**6.** Because the Court finds that indemnity clause is insufficient to bind I.M.C., the provision in the clause requiring I.M.C. to provide legal fees is also inadequate. Therefore, as to Count IV of Boise's complaint that prays for such relief, I.M.C.'s Motion for Summary Judgement will be granted.

**7.** The insurance clause is set out in the contract as follows:

14.1 *Contractor's Liability Insurance.* During the performance of the Work, Contractor agrees to carry and maintain, at its expense, in companies approved by Boise Cascade, the following insurance to cover its operation and employees:
14.1.1 Workers' compensation required by the law of the state of operations.
14.1.2. Employers' liability
14.1.3. Comprehensive general liability with all standard coverages including:
1) Premises and operations
2) Elevators
3) Boise Cascade's and Contractors protective
4) Completed operations
5) Products

6) If specifically requested by Boise Cascade, explosion, collapse and underground hazards
14.1.4 Comprehensive automobile insurance.
Coverage limits on the insurance required by this Section 14.1 shall be not less than the amounts stated in Article VI of the Agreement.
Contractor shall also require its Subcontractors to carry such insurance in such amounts of coverage as shall adequately protect against the risk involved in Subcontractor's Work.
Prior to beginning the Work, Contractor shall deliver to Boise Cascade certificates from Contractor's and Subcontractors' insurers evidencing the above-referenced coverages which shall name Boise Cascade as an additional insured and shall provide on their face that the policies they represent will not be terminated, amended or allowed to expire without 30 days' prior written notice to Boise Cascade.

**8.** Defendant's claim is, in essence, a claim that I.M.C. breached this provision of the contract. Although it is unclear whether I.M.C. procured insurance that would indemnify Defendant for injuries caused by Defendant's negligence, the

indemnity policies enunciated by the Maine Law Court apply to insurance procurement provisions *to the extent that such provisions should be strictly read if they are claimed to be operative to waive an employer's immunity under the Workers' Compensation Act or if they are invoked to require a party to indemnify against its own negligence.*

No Maine case has dealt with the treatment of insurance procurement clauses in this context. While the Court does not disagree with Boise that a promise to procure insurance is distinct from a promise to personally indemnify another party, the purpose and end result of such a contract clause often mirrors an indemnity clause; *e.g.,* the waiver of the employer's statutory immunity. The ability of a party to contractually displace an employer's statutory immunity cannot be made absolute by the simple claim of contractual format. Maine's strong interest in maintaining the balance struck by its Workers' Compensation Act persuades this Court that an employer's immunity should be respected unless the employer *explicitly* waives that immunity. Thus, when an insurance procurement clause will result in an employer's liability for its employees injury, beyond the liability provided for in the Act, the Court must read the insurance clause strictly, permitting a waiver only upon explicit language.

Maine policy disfavoring a party from being responsible for its own negligence also applies to insurance procurement clauses. Plaintiff relies heavily on Illinois case law, citing primarily *Zettel v. Paschen Contractors, Inc.,* 100 Ill.App.3d 614, 56 Ill.Dec. 109, 427 N.E.2d 189 (1st Dist.1981) for the proposition that insurance procurement clauses are distinct from indemnity clauses.[9] Boise's Reply Memorandum at 3.

Boise notes that the lack of specific language contained in the contested insurance clause in *Zettel* did not "preclude the court from entering summary judgment on this point." *Id.* However, *Zettel* dealt *only* with the issue of whether the trial court erred in stating that insurance procurement clauses are *per se* void under the Illinois Structural Work Act. *Zettel,* 56 Ill.Dec. at 111, 427 N.E.2d at 191.

Furthermore, the same court that decided *Zettel* later held that its decision in *Zettel* was not helpful in deciding whether specific contract language is sufficient to require a party to indemnify for another party's negligence. *Coverdill v. Lurgi Corporation,* 146 Ill.App.3d 112, 99 Ill.Dec. 915, 917, 496 N.E.2d 1007, 1009 (1st Dist. 1986). In *Coverdill,* the court held that insurance procurement clauses, while permissible, must clearly and explicitly provide that the indemnitor must obtain insurance to indemnify the indemnitee against the indemnitee's own negligence. *Id.* 99 Ill. Dec. at 917, 496 N.E.2d at 1009.

In *Kennecott Copper Corporation v. General Motors Corporation, Terex Division,* 730 F.2d 1380, 1382 (10th Cir.1984), the court looked to the general purpose of an insurance procurement clause in its decision to strictly read the contested contract provision. As in *Kennecott,* the purpose of the insurance clause at issue in this suit is to insure a party against its own negligence. In essence, therefore, the effect of the clause is indemnification and the presumption against such indemnification should apply. *Id.* at 1382.

The Court thus finds that the policies inherent in both the Maine Workers' Compensation Act and Maine common law require that the Court read the insurance procurement clause strictly. The insurance

---

Court finds that I.M.C. was not required by the contract to obtain such insurance.

**9.** Defendant also cites Florida law. *See, e.g. Mamba Engineering Company v. Jacksonville Electric Authority,* 470 So.2d 758 (Fla.App. D1 1985); *Cone Brothers Contracting Co. v. Ashland-Warren,* 458 So.2d 851 (Fla.App. D2 1984). The Court finds that the cited cases are distinct and, to the extent that such cases are relevant

and reach contrary results, this Court chooses not to follow them.

Boise also cites two Maine Superior Court cases in support of its view. The Court gleans little from these cases and notes that it may not cite and, therefore, cannot rely on these unpublished opinions for determinations of state law. *Bachelder v. Communications Satellite Corporation,* 837 F.2d 519, 523 n. 5 (1st Cir.1988).

clause contained in Boise's contract with I.M.C. does not explicitly waive I.M.C.'s immunity, nor does it explicitly state that the insurance will cover Boise's own negligent acts. Therefore, I.M.C. is not bound by the insurance procurement clause and I.M.C.'s Motion for Summary Judgment as to Count I of Boise's Third–Party Complaint will be granted.

### Subrogation Clause

■ Count III of Boise's Third–Party Complaint alleges that Boise is entitled, pursuant to the contract's subrogation clause, to I.M.C.'s and CUIC's statutory lien on the workers' compensation benefits CUIC paid to Plaintiff.[10] Boise argues that I.M.C.'s waiver of its right to subrogation applies to CUIC and prohibits either I.M.C. or CUIC from proceeding against Boise for any monies CUIC paid to Plaintiff pursuant to Plaintiff's workers' compensation claim. Boise's interpretation and requested application of the subrogation clause runs contrary to the clear language of the Workers' Compensation Act.

Section 68 of the Workers' Compensation Act states that an injured employee may either claim compensation under the Act or proceed at law against a third party and that:

[i]f the injured employee elects to claim compensation and benefits under this Act, any employer having paid such compensation or benefits ... shall have a lien for the value of compensation paid on any damages subsequently recovered against the third person liable for the injury. If the employee ... fails to pursue his remedy against the third party ... the employer or compensation insurer shall be subrogated to the rights of the injured employee and shall be entitled to enforce liability in their own name or in the name of the injured party....

If the employee ... recovers damages from a third person, he shall repay to the

employer or compensation insurer, out of the recovery against the third person, the benefits paid to him by the employer or compensation insurer under this Act.... 39 M.R.S.A. § 68. This section provides two distinct options to the employer or compensation insurer—a statutory lien or subrogation. *Connell v. Aetna Life & Casualty Co.,* 436 A.2d 408, 409 (Me.1981). These options are clearly separate and distinct.

■ Subrogation refers solely to the employer's or compensation insurer's right to bring an action directly against the alleged third party tortfeasor. *See, e.g., Id.* at 410; *Overend v. Elan I Corporation,* 441 A.2d 311, 313 (Me.1982). When an employee fails to pursue his common law claim against a third party, the statute permits an employer or compensation insurer to be subrogated to that claim and to bring the claim in the employee's stead. *Overend,* 441 A.2d at 313. Thus, subrogation is the placing of one party into the position of a second party in respect to the second party's claim and his rights and remedies associated with the claim. *Travelers Insurance Company v. Foss,* 124 Me. 399, 400, 130 A. 210 (1925).

■ The statutory lien provided for in section 68, however, is not a right exercised against the alleged third party tortfeasor; rather it is a lien against the amount of damages recovered by the employee from the third party. *Liberty Mutual Insurance Company v. Weeks,* 404 A.2d 1006, 1011 (Me.1979) (court noted that the 1969 legislation provided employers with a lien on any recovery). The parties asserting the lien do not step into the employee's shoes or assert the rights of the employee against the alleged third party tortfeasor.

Therefore, the subrogation clause contained in Boise's contract with I.M.C. cannot provide Boise with any legal leverage in regard to CUIC's lien against any dam-

---

**10.** The subrogation clause reads as follows:

Boise Cascade and Contractor hereby waive all rights that they have or that their respective insurer's may have, *by operation of the doctrine of subrogation each against the other* for the loss or damage insured or insurable by the insurance policies carried or required to be carried by them pursuant to the terms of the contract documents.

General Conditions of Contract, Article XVI (emphasis added).

ages Plaintiff may recover from Boise. The subrogation clause is inapplicable because CUIC's lien is not against Boise, but rather against Plaintiff's potential recovery. Furthermore, as explained above, neither I.M.C. nor CUIC is asserting rights "by operation of the doctrine of subrogation," but rather rights conferred by the statute. Thus, the subrogation clause by its express terms has no application to CUIC's lien and Boise has no right to be awarded the benefit of that lien.

Accordingly, it is ORDERED that Defendant and Third Party Plaintiff's Motion for Summary Judgment be, and it is hereby, DENIED. It is FURTHER ORDERED that Third–Party Defendant's Motion for Summary Judgment be, and it is hereby, GRANTED.