**Mark A. FOWLER and Famah Fowler, Plaintiffs, Appellees,**

v.

**BOISE CASCADE CORPORATION, Defendant and Third Party Plaintiff, Appellant,**

v.

**I.M.C. OF VIRGINIA and Commercial Union Insurance Companies, Third Party Defendants, Appellees.**

Nos. 90–1818, 90–1879.

United States Court of Appeals, First Circuit.

Heard July 31, 1991.

Decided Oct. 29, 1991.

Rehearing and Rehearing En Banc Denied Dec. 3, 1991.

James M. Bowie with whom Elizabeth G. Knox and Thompson & Bowie, Portland, Me., were on brief, for appellant.

C. Donald Briggs with whom Joseph M. Cloutier & Associates, Rockport, Me., was on brief, for appellees.

James C. Hunt with whom Frederick C. Moore, and Robinson, Kriger, McCallum & Greene, P.A., Portland, Me., were on brief, for I.M.C. of Virginia, third party defendant, appellee.

Harold J. Friedman, Portland, Me., for Commercial Union Ins. Companies, third party defendant, appellee.

Before TORRUELLA, Circuit Judge, HILL * and BOWNES, Senior Circuit Judges.

BOWNES, Senior Circuit Judge.

This is a consolidated appeal from two judgments, one in tort and the other in contract. The contract action derives from the tort action. Jurisdiction over both actions is based on diversity of citizenship. The controlling law is the substantive law of the state of Maine.

* Of the Eleventh Circuit, sitting by designation.

*The Parties and Procedural History of Case*

Defendant-appellant and third-party plaintiff Boise Cascade Corporation (Boise) is a Delaware corporation. It operates a paper mill in Rumford, Maine. Boise contracted with third-party defendant-appellee I.M.C. of Virginia (I.M.C.) to do some painting in its mill. Plaintiff-appellee Mark A. Fowler, an employee of I.M.C. fell in a hole and injured himself while working in the Boise mill. Fowler received workmen's compensation benefits from I.M.C. The benefits were paid by I.M.C.'s insurer, Commercial Insurance Companies (CUIC), also a third party defendant-appellee.

Fowler brought a tort action against Boise; liability was admitted and the jury awarded him $675,000 in damages and his wife, Famah, $50,000. The jury verdicts have been appealed by Boise.

The contract action arises from the painting contract between Boise and I.M.C. which contained an indemnity clause, an insurance procurement clause and a subrogation clause. The parties agreed in the contract that Maine law controlled. Boise sued I.M.C. and its insurer CUIC. It claimed that the indemnity and insurance procurement clauses required I.M.C. to indemnify Boise. It further claimed that the subrogation clause in the contract required I.M.C. and CUIC to provide Boise with the benefits of CUIC's worker's compensation lien and to pay Boise's attorney's fees. The district court rejected Boise's contract claims and granted summary judgment in favor of third-party defendants-appellees, I.M.C. and CUIC. *Fowler v. Boise Cascade Corp.*, 739 F.Supp. 671 (D.Me.1990).

We affirm the jury verdicts against Boise and the district court's grant of summary judgment for I.M.C. and CUIC. We discuss first the tort action and then the contract claims.

## I. THE TORT ACTION

Boise appeals the jury verdicts on the tort action on the grounds that the trial judge erred in his instructions on causation and that the award was excessive due to jury bias, prejudice or passion.

The causation issue was whether plaintiff Mark Fowler's medical condition at the time of trial was due to his fall into the hole on Boise's premises. There was testimony to the effect that Fowler suffered from a psychogenic pain disorder, (also described as somatiform pain disorder or chronic pain syndrome), that was caused by his fall into the hole on Boise's premises. There was also testimony that there was no apparent physiological basis for the pain and that Fowler's boyhood upbringing in a family with a strong work ethic created a predisposition towards a somatiform pain disorder (chronic pain syndrome). One of the witnesses, Richard Pollack, a licensed social worker, testified that Fowler's family history of a strong work ethic prevented him from taking any time off from work absent a legitimate excuse to do so. According to Pollock, Fowler's strong work ethic background and the desire for leisure time created a need for a reason to stop working, and the fall supplied such a reason.

It is Boise's position that the fall was not an event that caused or helped to cause Fowler's chronic pain syndrome but that it only provided an opportunity for this condition to become manifest. Boise does not argue that the evidence was insufficient for a finding of causation. Boise assigns as error the district court's refusal to give the following requested jury instruction.

On the other hand, it is not enough that the negligent acts complained of may constitute a series of prior events without which, as the evidence proves, that the damage would not have happened or that the negligence in question afforded only an opportunity for occasion of the injury or a mere condition of it.

The court rejected the instruction because, in its judgment, the charge correctly reflected the Maine law, and the proffered instruction would have been confusing to the jury. We agree. The Maine law court has held that "[a] party is not entitled to have a requested instruction given, even if it states the law correctly, unless it appears

... that it is not misleading, that it is not covered by the charge, and that the refusal to give it would be prejudicial." *Towle v. Aube,* 310 A.2d 259, 266 (Me.1973). *See also Pelkey v. Canadian Pacific Ltd.,* 586 A.2d 1248, 1250 (Me.1991); *Lambert v. Tripp,* 560 A.2d 1097, 1099 (Me.1989); *Schneider v. Richardson,* 438 A.2d 896, 897 (Me.1981).

The court instructed the jury on causation as follows:

Although Boise Cascade has admitted [negligence] ..., in order to make their case the plaintiffs must also show that Boise Cascade's conduct caused the damages that plaintiffs are seeking to recover.

.    .    .    .    .

An injury or damage is a direct result of an act or failure to act when that act or failure to act starts an event or chain of events which inevitably leads to the injury or damage. This is an objective test....

An injury or damage is a reasonably probable consequence of an act or failure to act when that act or failure to act creates a risk that might reasonably be expected to result in such injury or damage, even though the exact nature of the injury of damage need not, itself, be foreseeable. This is a subjective test....

[A] person is also liable for negligently causing an injury or damage to another even though a physical or psychological condition makes the extent of the injury or damage greater than a reasonable person could have foreseen as a probable result of the negligence. This is true even though the negligent person could not have discovered the special physical or psychological condition of the person injured. However, a defendant is not liable for damages that were not caused by its negligence but rather were caused only by the original physical or psychological condition.

This instruction correctly reflected Maine law. *See Taylor v. Hill,* 464 A.2d 938, 944 n. 2 (Me.1983); *Wing v. Morse,* 300 A.2d 491, 495–96 (Me.1973).

We deal next with Boise's argument that the jury award was excessive. Our review is limited to a single question: does the jury award of $675,000 to Fowler and $50,000 to his wife grossly exceed the norm so as to shock the conscience? *Gonzalez–Marin v. Equitable Life Assur. Soc.,* 845 F.2d 1140 (1st Cir.1988). We find it does not. There was a plethora of evidence from physicians and other knowledgeable witnesses that Mark Fowler had suffered a severe and debilitating injury as a result of his fall and that his wife had suffered a prolonged loss of consortium. Mark Fowler was a productive worker prior to the accident, but since the accident has been unable to perform the simplest of tasks. The jury heard the evidence and observed the plaintiff. It is not our place to substitute our judgment for that of the jury unless we find the jury acted under some bias, prejudice, or improper influence, or reached its verdict under some mistake of law or in disregard of the evidence. *Currier v. Cyr,* 570 A.2d 1205, 1210 (Me.1990); *Phillips v. Eastern Maine Medical Center,* 565 A.2d 306, 309 (Me.1989); *S.H. Nevers Corp. v. Husky Hydraulics, Inc.,* 408 A.2d 676, 681 (Me.1979). Because none of the above conditions are present here, the verdicts shall stand.

## II. THE CONTRACT ACTION

Boise asserts that I.M.C. and its insurance carrier, CUIC, are liable for the $725,000 Fowler judgments pursuant to the terms of a Fixed Sum Agreement ("Agreement") between I.M.C. and Boise. Boise alleges that I.M.C. breached its contract to provide insurance and/or indemnify Boise in accordance with the procurement, indemnity, and subrogation clauses of the Agreement.

Both Boise and I.M.C. filed motions for summary judgment. The district court held, as a matter of law, that the contested clauses do not require either I.M.C. or CUIC to indemnify Boise for the judgments in favor of the Fowlers. The court granted I.M.C.'s Motion for Summary Judgment and dismissed Boise's Motion for Summary

Judgment. Boise appeals. There are three issues: (1) whether the insurance procurement clause required I.M.C. to provide Boise with general liability insurance under the particular facts of this case; (2) whether the indemnity clause obligates I.M.C. to indemnify Boise for the Fowlers' judgments; and (3) whether, under the subrogation clause, Boise was entitled to any workers' compensation lien held by I.M.C. and CIUC.

## III. DISCUSSION

Our review of the district court's disposition of the motions for summary judgment is plenary. *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). Fed.R.Civ.P. 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Upon motion, summary judgment is "mandate[d] ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). It is not for the trial judge on summary judgment to weigh the evidence "but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). In making our determination, we view the record in the light most favorable to the party opposing the motion, accepting all reasonable inferences favoring that party. *Garside v. Osco Drug, Inc.,* 895 F.2d 46, 48 (1st Cir.1990). This standard applies even where, as here, the district court is faced with summary judgment motions from different parties. *Griggs–Ryan,* 904 F.2d at 115; *see also, Continental Casualty Co. v. Canadian*

*Universal Ins. Co.,* 924 F.2d 370, 371 (1st Cir.1991).

Under Maine law, the interpretation of an unambiguous contract is a matter of law for the court to decide; the interpretation of a contract with ambiguous provisions is a matter for the factfinder. *Portland Valve, Inc. v. Rockwood Systems Corp.,* 460 A.2d 1383, 1387 (Me. 1983); *see also Triple–A Baseball Club v. Northeastern Baseball,* 832 F.2d 214, 220 (1st Cir.1987). Contract language is ambiguous when it is reasonably prone to different interpretations. *Triple–A Baseball Club,* 832 F.2d at 220. When a contract is unambiguous, the trial court may decide an issue pertaining thereto by summary judgment. The district court found that the Fixed Sum Agreement was an unambiguous contract and therefore, disputes regarding its interpretation could be decided on summary judgment. We agree.

### A. The Insurance Procurement Clause

Boise asserts that the district court erred in holding that the Agreement did not require I.M.C. to procure general liability insurance on behalf of Boise. The district court did not make such a holding.[1] The district court stated that under Maine law, "when an insurance procurement clause will result in an employer's liability for its employees injury, beyond the liability provided for in [the Workers' Compensation] Act, the Court must read the insurance clause strictly, permitting a waiver only upon explicit language." *Fowler v. Boise Cascade Corp.,* 739 F.Supp. 671, 676 (D.Me.1990). There is a significant difference between holding that I.M.C. was not required to provide general liability insurance and that the insurance procurement clause did not waive the employer's immunity under the Workers' Compensation Act, unless the employer specifically contracted to do so.

The purpose of an insurance procurement clause is to contractually allocate the burden of potential loss to one of the contracting parties. In this case, the insur-

---

1. Had the district court issued such a holding, it indeed would have been in error because it would have contravened the plain language of the Agreement.

ance procurement clause [2] created a limited duty on I.M.C. to provide insurance for Boise for actions arising out of performance of the contract.[3] The district court held that, under the terms of the contract and the particular facts of the case, I.M.C. did not have a duty to provide insurance for the liability arising from Mr. Fowler's injuries. We find the court's ruling on the procurement clause consistent with Maine statutory and common law.

■ An employer cannot waive his right to statutory immunity from suit, unless the employer explicitly makes such a waiver. The Maine Workers' Compensation Act[4] provides that "employers who provide workers' compensation coverage for their employees are immunized from suits arising out of the workers' injuries." *Diamond International Corp. v. Sullivan & Merritt*, 493 A.2d 1043, 1045 (Me.1985). An assenting employer is "exempt from any liability on account of its employee's injuries and death except as provided under the act." *Roberts v. American Chain & Cable Company*, 259 A.2d 43, 46 (Me. 1969). The trial judge perceptively noted that "[t]he ability of a party to contractually displace an employer's statutory immunity cannot be made absolute by the simple claim of contractual format." *Fowler*, 739 F.Supp. at 676.

The Maine Law Court has addressed the statutory immunity issue as it relates to indemnity and contribution clauses, but has never encountered the issue as it relates to procurement clauses. *Diamond*, 493 A.2d 1043; *Roberts*, 259 A.2d 43. We agree with the district court that although there is a distinction between procurement, indemnity, and contribution clauses, the principle of statutory immunity embodied in the Workers' Compensation Act is equally applicable to these separate insurance provisions.[5] The court found that the policies

2. The procurement of insurance clause in pertinent part reads as follows:

14.1 *Contractor's Liability Insurance.* During the performance of the Work, Contractor [I.M.C.] agrees to carry and maintain, at its expense, in companies approved by Boise Cascade, the following insurance to cover its operation and employees:

14.1.1 Workers' compensation required by law of the state of operations.

14.1.2 Employers' liability.

14.1.3 Comprehensive general liability with all standard coverages including:
1) Premises and operations
2) Elevators
3) Boise Cascade's and Contractor's protective
4) Completed operations
5) Products
6) If specifically requested by Boise Cascade, explosion, collapse and underground hazards

14.1.4 Comprehensive automobile insurance.

Coverage limits on the insurance required by this Section 14.1 shall be not less than the amounts stated in Article VI of the Agreement.

Contractor shall also require its Subcontractors to carry such insurance in such amounts of coverage as shall adequately protect against the risk involved in Subcontractor's Work.

Prior to beginning the Work, Contractor shall deliver to Boise Cascade certificates from Contractor's and Subcontractors' insurers evidencing the above-referenced coverages which shall name Boise Cascade as an additional insured and shall provide on their face that the policies they represent will not be terminated, amended or allowed to expire without 30 days' prior written notice to Boise Cascade.

General Conditions of the Agreement, Article XIV, para. 14.1.

3. Boise claims that I.M.C. breached this provision of the contract. It is unclear whether I.M.C. procured insurance that would indemnify Boise for Boise's negligence. We find, however, that I.M.C. was not required by the contract to provide such insurance.

4. "An employer who has secured the payment of compensation in conformity [with certain Compensation provisions] is exempt from civil actions ... involving personal injuries sustained by an employee arising out of and in the course of his employment...." Me.Rev.Stat.Ann. tit. 39 § 4 (West 1989).

5. Boise correctly states that the case cited by the district court, *Kennecott Copper Corp. v. GM Corp., Terex Div.*, 730 F.2d 1380 (10th Cir.1984), to illustrate that a strict construction analysis should apply to procurement clauses as well as indemnity clauses, was essentially overruled by the Utah Supreme Court in *Pickhover v. Smith's Management Corp.*, 771 P.2d 664 (Utah Ct.App. 1989). Nevertheless, the court's oversight has little bearing on the instant case. The cases raised by Boise do not address the issue of waiving the employer's statutory immunity from suit, but rather, are directed to collateral issues that are not relevant to this case.

enunciated by the Maine Law Court for indemnity clauses are applicable to insurance procurement provisions *"to the extent that such provisions should be strictly read if they are claimed to be operative to waive an employer's immunity under the Worker's Compensation Act or if they are invoked to require a party to indemnify against its own negligence."* Fowler, 739 F.Supp. at 676 (emphasis in original); *see also Diamond,* 493 A.2d at 1046.

A court applying Maine law should strictly construe waivers of this statutory immunity so as to preserve the legislative intent behind the Workers' Compensation Act. The Act represents a compromise between an employer's needs and the employee's safety. The "employer immunity granted in return for certain and speedy relief, without regard to fault . . . was a critical feature of the bargain struck by the Act." *Diamond,* 493 A.2d at 1046. The Maine Law Court found "[t]hat the intent of the statute was not to burden the industries of the State beyond the scope of the Act as defined by lawmakers." *Roberts,* 259 A.2d at 49.

In *Roberts,* the intestate Davis, an employee of A.L. Doggett, Inc. died as a result of an injury he received in the course of his employment. Davis was crushed to death when the chain holding a petroleum tank broke during the tank's installation. The administrix of Davis' estate sued the manufacturer and distributor of the hoisting chain that caused his death. The defendant manufacturer, American Chain & Cable Co., Inc., filed a third-party complaint against Dodgett asserting that Dodgett was negligent in its use of the chain. American Chain & Cable sought either exoneration or contribution from Dodgett. The court noted that Dodgett may have been negligent, but held that Dodgett had already paid for Davis' loss pursuant to Me.Rev.Stat.Ann. tit. 39 § 4 and was immune from suit under the workmen's compensation act. *Roberts,* 259 A.2d at 47.

The Maine Law Court reviewed the equitable policy that joint tortfeasors may seek contribution from each other. The court held that the worker's compensation act overrides the right to contribution. "The equities, however, which support contribution between concurrently negligent tortfeasors are not so compelling as to justify frustration of the purpose of our workmen's compensation act by carrying the doctrine over into our legislative program regulating the industrial injury." *Id.* at 48. The Maine Law Court noted that the overriding strength of the workmen's compensation act does not apply only to cases involving contribution:

> This statutory policy providing the employer with a definitive liability for payment of benefits predictable with some degree of accuracy in all industrial accidents and resting upon the employer's immunity from further damages beyond the call of the compensation act transcends *any* counteracting judicial considerations of equitable principles.

*Id.* at 49–50 (emphasis added). Therefore, the district court's application of the "strict construction" principle to procurement clauses is consistent with Maine statutory law.

The Maine Law Court has held that this statutory immunity can be waived. But, this waiver must be explicit and intended by the employer. "We do not intimate that a third-party tortfeasor may not implead an assenting employer under certain conditions. The assenting employer may have obligated himself to indemnify the third-party by an *express* contract of indemnity." *Id.* at 51 (emphasis added).

There is no explicit provision in the procurement clause stating that I.M.C. intended to waive its statutory immunity from suit by one of its employees. We cannot read a waiver into the contract because such a reading would be contrary to legislative intent. Furthermore, it is the general rule that courts should not rewrite contracts, especially if the two contracting parties are two corporations acting at arms length. *See Triple–A Baseball Club,* 832 F.2d at 220.

We next turn to Maine common law to see if that offers an avenue of escape for Boise. It does not. The common law of

Maine is set forth in *Emery Waterhouse Co. v. Lea,* 467 A.2d 986, 993 (Me.1983):

> But, when purportedly requiring indemnification of a party for damage or injury caused by that party's own negligence, such contractual provisions, with virtual unanimity, are looked upon with disfavor by the courts, and are construed strictly against extending the indemnification to include recovery by the indemnitee for his own negligence. *Doyle v. Bowdoin College,* 403 A.2d 1206, 1208–09 (Me.1979); *United States v. Seckinger,* 397 U.S. 203, 211–12, 90 S.Ct. 880, 885, 25 L.Ed.2d 224 (1970). It is only where the contract on its face by its very terms clearly and unequivocally reflects a mutual intention on the part of the parties to provide indemnity for loss caused by negligence of the party to be indemnified that liability for such damages will be fastened on the indemnitor, and words of general import will not be read as expressing such an intent and establishing by inference such liability. *Freed v. Great Atlantic & Pacific Tea Co.,* 401 F.2d 266, 270 (6th Cir.1968); *Kroger Company v. Giem,* 215 Tenn. 459, 387 S.W.2d 620, 626 (1964); *Jewett v. Capital National Bank of Austin,* 618 S.W.2d 109, 112 (Tex.Civ.App.1981).

▮ We recognize that Maine case law on this principle has spoken to indemnity clauses rather than to procurement clauses. We agree, nevertheless, with the district court that this common law principle disfavoring one from being excused for her own negligence without express written agreement is as applicable to procurement clauses as it is to indemnity clauses. There was no provision in the procurement clause that explicitly provided that I.M.C.

would be responsible for Boise's sole negligence.

Based on Maine statutory law and common law principles, we agree with the district court's ruling that the procurement clause did not meet the strict construction standard necessary to waive I.M.C.'s statutory immunity or to shift the liability for Boise's sole negligence to I.M.C.

**B. The Indemnity Clause**

▮ Boise next asserts that the district court erred in holding that I.M.C. did not waive its statutory immunity under the indemnity clause. In addressing this argument, we must consider two issues in connection with the indemnity clause.[6] First, whether I.M.C. waived its statutory immunity and second, whether I.M.C. and Boise contracted to make I.M.C. liable for Boise's sole negligence.

The strict construction standard enunciated in *Diamond,* 493 A.2d 1043 and *Roberts,* 259 A.2d 43 is directly applicable to the indemnity provision. Following the lead of the Supreme Court of Washington, the *Diamond* court articulated strict requirements for a valid waiver of employer immunity by an indemnification agreement:

> "We hold that an indemnity clause of this type is enforceable only if it clearly and specifically contains a waiver of the immunity of the workers' compensation act, either by so stating or specifically stating that the indemnitor assumes potential liability for actions brought to its own employees."

*Diamond,* 493 A.2d 1043, 1048 (quoting *Brown v. Prime Construction Co., Inc.,* 102 Wash.2d 235, 684 P.2d 73, 75 (1984)). In this case there is no express waiver of statutory immunity in the indemnity clause

---

**6.** The applicable contract provisions state:

> 16.1 *Contractor's Indemnity.* Contractor [I.M.C.] shall indemnify, save and hold Boise Cascade harmless from and against any and all loss, damage, expense, responsibility and/or liability for all loss or injury of any kind or nature (including death) to all persons or property, or for claims therefor, whether or not Boise has suffered actual loss ... resulting from, pertaining to or arising out of performance of this Contract by Contractor, its employees, agents, assigns ...

> The Contractor shall assume, on behalf of Boise Cascade, the defense of any lawsuit or administrative proceeding which may be brought against Boise Cascade upon any such claim, demand, right, action or cause of action, and pay on behalf of Boise ... the amount of any judgment that may be entered against Boise in connection therewith. *This indemnity shall not cover losses caused by Boise Cascade's sole negligence.*

> General Conditions of the Agreement, Article XVI, para. 16.1 (emphasis added).

or in any other clause embodied in the Agreement. The district court was correct in ruling that the indemnity clause did not waive I.M.C.'s statutory immunity from suit.

██ Furthermore, the indemnity clause clearly states that "[t]his indemnity shall not cover losses caused by Boise Cascade's sole negligence." Boise admits that the absence of a cover on the drain hole into which Fowler fell was due to its sole negligence. Yet Boise claims that reading the procurement clause together with the indemnity clause leads to the conclusion that I.M.C. is liable for Boise's negligence. This argument contravenes the explicit language of the contract. The Maine Law Court looks to the entire contract to determine its meaning.

> [A contract] ... is to be construed in accordance with the intention of the parties, which is to be ascertained from an examination of the whole instrument. All parts and clauses must be considered together that it may be seen if and how far one clause is explained, modified, limited or controlled by the others.

*Peerless Insurance Co. v. Brennon*, 564 A.2d 383, 385 (Me.1989) (quoting *Swift v. Patrons' Androscoggin Mutual Fire Ins. Co.*, 125 Me. 255, 256, 132 A. 745, 746 (1926)). Boise asserts that "[i]nherent in an agreement to procure insurance for another is the understanding that the party will cover that party's own negligence." (Appellant Boise's brief at 23.) This assertion is contrary to the plain language of the contract. The last sentence of the indemnity clause reads: "This indemnity shall not cover losses caused by Boise Cascade's sole negligence." If this argument were to stand, then the last sentence in the indemnity clause would have absolutely no meaning. This could not have been the intent of the parties. A holding favorable to Boise's interpretation would lead to results inimical to Maine's statutory and common law principles as well as distort the plain meaning of the contract.

### C. The Subrogation Clause

Boise claims that I.M.C. and CUIC waived their right to recover the amount of their lien from the judgments rendered against Boise in favor of the Fowlers. The subrogation clause in the Agreement clearly provides that Boise and I.M.C. waive their rights of subrogation against each other for loss or damage pursuant to the terms of the contract.[7] But, this is not the issue; I.M.C. and CUIC are *not* seeking subrogation from Boise. Rather, I.M.C. and CUIC seek to exercise their right to a statutory lien against Mark Fowlers' judgment pursuant to section 68 of the Maine Workers' Compensation Act.

██ Section 68 states that an injured employee may either file a compensation claim and recover from the employer under the Act or proceed at law against a third party and that:

> [i]f the injured employee elects to claim compensation and benefits under this Act, any employer having paid such compensation or benefits ... shall have a lien for the value of the compensation paid on any damages subsequently recovered against the third person liable for the injury. If the employee ... fails to pursue his remedy against the third party ... the employer or compensation insurer shall be subrogated to the rights of the injured employee and shall be entitled to enforce the liability in their own name or in the name of the injured party....

> If the employee ... recovers damages from a third person, he shall repay to the employer or compensation insurer, out of the recovery against the third person, the benefits paid to him by the employer or compensation insurer under this Act....

---

7. The subrogation clause reads as follows:
   Boise Cascade and Contractor [I.M.C.] hereby waive all rights that they may have, or that their respective insurers may have, *by operation of the doctrine of subrogation, each against the other* for loss or damage insured or insurable by the insurance policies carried or required to be carried by them pursuant to the terms of the Contract Documents.
   General Conditions of the Agreement, Article XVI, para. 16.2 (emphasis added).

Me.Rev.Stat.Ann. tit. 39 § 68. This section provides two separate and distinct options to the employer or compensation insurer. The employer or compensation insurer may either seek subrogation from the third party tortfeasor through common law remedies or place a lien for the amount of compensation the employee received against the judgment the injured party received. *Overend v. Elan I Corporation,* 441 A.2d 311, 313 (Me.1982); *Conell v. Aetna Life & Casualty Co.,* 436 A.2d 408, 409 (Me.1981); *Travelers Insurance Company v. Foss,* 124 Me. 399, 130 A. 210 (1925); *Liberty Mutual Insurance Company v. Weeks,* 404 A.2d 1006, 1011 (Me. 1979).

Under the statute, the employer or compensation insurer has the right to bring an action directly against the third party tortfeasor if the employee fails to exercise his common law claim. *Overend,* 441 A.2d at 313. Subrogation refers to the placing of one party in the position of a second party with respect to the rights and obligations of a claim. *Travelers,* 130 A. at 210. It is clear from the contract that both Boise and I.M.C. waived such subrogation rights.

The Fowlers have already pursued their common law claim against Boise and have received favorable judgments. I.M.C., through CUIC, has paid workers' compensation benefits to Mark Fowler as a result of his accident. I.M.C. and CUIC seek to enforce their statutory lien against the amount of damages recovered by Mark Fowler from Boise. This is explicitly provided for by section 68 of the Workers' Compensation Act. *Liberty Mutual,* 404 A.2d at 1011. The lien is asserted against the employee who has sued the third party tortfeasor. Unlike subrogation, the party who has paid the workmens' compensation benefits does not step into the employee's shoes and assert his rights against the third party tortfeasor.

We agree with the district court that "the subrogation clause contained in Boise's contract with I.M.C. cannot provide Boise with any legal leverage in regard to CUIC's lien against any dam-ages Plaintiff may recover from Boise." *Fowler,* 739 F.Supp. at 677–678. Simply stated, Boise does not have standing to challenge the statutory lien because it is not a party who possesses any rights in connection with such a lien. The subrogation clause is inapplicable because CUIC's lien is against Mark Fowler's recovery and not against Boise. Neither I.M.C. nor CUIC asserts rights "by operation of the doctrine of subrogation" as provided in the subrogation clause, but rather by rights conferred by statute. Therefore, the district court's ruling on this issue must stand.

We have reviewed all other claims raised by the appellant, including its request for attorneys' fees and find them to be without merit. We uphold the summary judgment for I.M.C. and CUIC and affirm the denial of summary judgment for Boise. The judgment of the district court is

AFFIRMED.