Fabricant, J.
The City of Haverhill (“Haverhill”) and its insurer Commercial Union Insurance Company (“Commercial Union”) brought this action seeking indemnification from George Brox, Inc. (“Brox”) for money paid in settlement of personal injury claims made by two employees of a subcontractor, Gordon Construction Company (“Gordon”). The personal injury claims arose from an accident that occurred during a road resurfacing project on which Brox was the general contractor. Brox impleaded Gordon, seeking indemnification under the subcontract between them. Haverhill’s and Commercial Union’s claim against Brox has been previously resolved in their favor. The present cross-motions relate to Brox’s claim against Gordon. Gordon claims that the indemnification clause in the subcontract is unenforceable, either because G.L.c. 149, §29C, renders it void, or because Maine law governs the subcontract and bars enforcement of the indemnification clause. For the following reasons, Brox’s motion for summary judgment is ALLOWED, and Gordon’s motion for summary judgment is DENIED.
Background
The undisputed facts are as follows. On January 14, 1985, the Massachusetts Department of Public Works (“DPW’j awarded Brox a general contract for the resurfacing of Route 125 in Haverhill. The general contract required Brox to arrange for police officers to provide traffic control.
Brox sought bids from subcontractors for landscaping work. Gordon, a Maine Corporation with its principal place of business in Maine, but registered to do business in Massachusetts, submitted a bid. Brox sent its standard subcontract form to Gordon on March 4, 1985. Gordon signed it at its Maine offices on March 8, 1985, and returned it to Brox along with a signed “subcontractor’s certification” form required by the DPW. The subcontract bears the date of March 1, 1985.
Section 7 of the subcontract provides in pertinent part as follows:
INSURANCES, LIABILITY, PERFORMANCE & PAYMENTS BONDS: The SUBCONTRACTOR will indemnify and save harmless the CONTRACTOR from *384 any and all claims, liabilities, liens, demands, suits at Law or in Equity, and any and all manner of responsibility arising out of the performance of work hereunder. Should a claim or lien be filed by a third party, arising out of the activities of the SUBCONTRACTOR hereunder, the SUBCONTRACTOR will, in addition, reimburse the CONTRACTOR for all sums, including attorneys fees and expenses incurred as a result of such claim or lien . . .
Section 19 of the subcontract provides: “This SUBCONTRACT shall become effective upon the approval of the SUBCONTRACTOR by State of [Massachusetts][3] — Department of Public Works & Highways.” Section 16 of the subcontract provides that “the SUBCONTRACTOR acknowledges and agrees to be bound by” certain identified regulatory requirements, and by an attached “Certification of Non-Segregated Facilities." The certificatipn, which Gordon signed and returned to Brox with the subcontract, states as follows:
In order to ensure that said subcontractor’s certification becomes a part of all contracts under the prime contract, no subcontract shall be executed until an authorized representative of the Massachusetts Department of Public Works has determined, in writing, that the said certification has been incorporated in such subcontract, regardless of tier. Any subcontract executed without such written approval shall be void.
On March 13, 1985, Brox sent the subcontract, certification, and other documents to DPW, with a letter requesting approval.[4] Brox began work on the project on March 20, 1985. By letter dated June 5, 1985, the DPW notified Brox that “approval is granted to sublet the items of work as shown" to Gordon.
On November 20, 1985, Gordon was doing landscaping work along Route 125 pursuant to the subcontract. Brox had arranged for Michael Fasulo, a reserve police officer for the Ciiy of Haverhill, to provide traffic control. Fasulo wore his uniform but drove his private automobile. While he was following the Gordon crew along the highway, Fasulo struck and injured two Gordon employees, Mark Caldwell and Craig Hunt.
Caldwell and Hunt both resided in Maine, received medical treatment there, and received worker’s compensation benefits under Maine law. They then brought suit in Essex Superior Court, Civil Action No. 88-3010, against the Ciiy of Haverhill, as Fasulo’s employer. Commercial Union, as Haverhill’s insurer, settled that case for $150,000, and then brought this suit, seeking indemnification from Brox under the contract between Haverhill and Brox.
On April 27, 1994, the court (Grabau, J.) granted summary judgment to Commercial Union on its claim of indemnity against Brox, thus obligating Brox for the $150,000 recovery secured by Caldwell and Hunt. Brox now seeks indemnification from Gordon under Section 7 of the subcontract.
Discussion
The parties agree that there are no material issues of fact in dispute, and that resolution of this matter by summary judgment is appropriate. Gordon concedes that the liability in issue here falls within the terms of the indemnification provision of the subcontract, so that Brox is entitled to prevail if that provision is in effect and enforceable.
1. Application of G.L.c. 149, §29C
Gordon argues that G.L.c. 149, §29C, applies to the subcontract and renders the indemnification clause unenforceable. General Laws c. 149, §29C, provides as follows:
Any provision for or in connection with a contract for construction, reconstruction, installation, alteration, remodeling, repair, demolition or maintenance work, including without limitation, excavation, backfilling or grading, on any building or structure, whether underground or above ground, or on any real property, including without limitation any road, bridge, tunnel, sewer, water or other utility line, which requires a subcontractor to indemnify any party for injury to persons or damage to property not caused by the subcontractor or its employees, agents or subcontractors, shall be void.
General Laws c. 149, §29C, was approved on August 1, 1985, and made effective retroactively as of April 7, 1985. St. 1985, c. 228, §3, 4.[5] Accordingly, its prohibition does not apply to contracts in effect prior to April 7, 1985.
Gordon argues that G.L.c. 149, §29C, applies to the subcontract, despite its March date and execution, because under Section 19 of the subcontract, it did not “become effective” until approval by DPW, which occurred after the effective date of the statute. Gordon contends that DPW’s approval was a condition precedent to the subcontract, so that the contract was not in effect until June 5, 1985, when the condition was satisfied.
A condition precedent defines an event which must occur before a contract becomes effective or before an obligation to perform arises under the contract. If the condition is not fulfilled, the contract, or the obligations attached to the condition, may not be enforced . . . When construing a contract a court looks to the parties’ intent to determine whether they have created a condition precedent. To ascertain intent, a court considers the words used by the parties, the agreement taken as a whole, and surrounding facts and circumstances . . . “Emphatic words" are generally considered necessary to create a condition precedent that will limit or forfeit rights under an agreement . . . However, emphatic or precise words are not absolutely necessary ... In *385 the absence of the usual words, a condition precedent may be found to exist if the intent of the parties to create one is clearly manifested in the contract as a whole.
Massachusetts Municipal Wholesale Electric Company v. Danvers, 411 Mass. 39, 45-46 (1991) (citations omitted).
Here, the subcontract provides that it “shall become effective upon" approval of the DPW. That language alone is insufficient to create a condition precedent. Id. at 45-46 (there is “nothing” in the language “shall be effective upon” that “would support a conclusion that the contractual language itself creates a condition precedent”). The subcontract does not contain the sort of language that the case law identifies as in itself creating a condition precedent. Id. at 46 (citing authorities indicating that “if and when,” “on condition that," “provided that,” and “if’ would create a condition precedent). Nor does Gordon point to any other provision of the subcontract, or of the general contract which it incorporates,[6] as exhibiting an intent of the parties to create a condition precedent.[7]
The remaining factor for the Court to consider is whether the surrounding facts and circumstances indicate an intent to create a condition precedent. The surrounding facts in this case indicate the opposite conclusion. If DPW approval were a condition precedent, then neither Brox nor Gordon would have had any obligation under the subcontract until June 5, 1985. In that case, Brox would have been free to find another subcontractor, willing to work for less money, and to request DPWs approval of the new subcontractor rather than of Gordon, without breaching any duty to Gordon, since no duty would yet exist under the subcontract. Gordon, similarly would have been free to renege, such as by refusing to provide required documentation, up to the date of the DPWs approval, and would not be in breach because there would be no enforceable contract up to that date. Such a result was clearly not the intent of the parties.
Approval of Gordon by the DPW was necessary for Gordon to do the work and for Brox to receive compensation. Thus, it is clear that the parties intended Section 19 to relieve both parties of their obligations in the event the DPW did not approve Gordon. A contingency of this sort — i.e., one that if not met voids an otherwise binding contract, creates not a condition precedent, but a condition subsequent. A contract that is subject to a condition subsequent is valid and enforceable from the date of execution, but non-occurrence of the condition subsequent will excuse performance. Wood v. Roy Lapidus, Inc., 10 Mass.App.Ct. 761, 764 n.6 (1980). As the subcontract was effective upon execution in March 1985, before the effective date of G.L.c. 149, §29C, it is not subject to the statutory prohibition.
2. Maine Law
Gordon’s alternative theory is that Maine law governs this dispute, and that Maine law would prohibit enforcement of the indemnification agreement under these circumstances. For the latter proposition, it relies on Diamond Intern. Corp. v. Sullivan & Merritt, 493 A.2d 1043, 1048 (Me. 1985).
Massachusetts has adopted a “functional choice-of-law approach that responds to the interests of the parties, the States involved, and the interstate system as a whole.” Bushkin Associates, Inc. v. Raytheon Co., 393 Mass. 622, 631 (1985). Absent a provision in the contract designating a choice of state law,[8] the parties’ rights
are determined by the local law of the state which, with respect to [the disputed] issue, has the most significant relationship to the transaction and the parties . . . The contacts to be taken into account include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil, residence, nationality, place of incorporation and place of business of the parties . . . [Other] [f]actors . . . include: (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied.

Id.

Here, one party is domiciled in Massachusetts, the other in Maine. The subcontract was drafted in Massachusetts, and one party signed it in each place. The subcontract was to be performed in Massachusetts. Although the two injured parties were both Maine residents, and both received medical treatment and worker’s compensation benefits there, the injuries occurred in Massachusetts. Most important, the subject matter of the contract was a public construction project funded by an agency of the Commonwealth of Massachusetts, pursuant to its statutory authority under Massachusetts law.
Maine’s interest in its policy regarding indemnification by employers for injuries to their employees[9] warrants consideration. But that interest cannot compete with Massachusetts’ stronger governmental interest in the application of its own law to a subcontract under its own public works contract. This Court therefore concludes that Massachusetts law governs, and does not bar enforcement of the indemnification provision of this subcontract. Accordingly, Brox is entitled to indemnification from Gordon for the liability that *386 has fallen to Brox from the injuries to Caldwell and Hunt.
Order for Judgment
For the above stated reasons, George Brox, Inc.’s motion for summary judgment is ALLOWED and Gordon Construction Corporation’s motion for summary judgment is DENIED.

 Nhe document reads “State of New Hampshire.” The parties agree that this was erroneous, and that the State referred to was intended to be Massachusetts.

 The parties’ statement of agreed facts describes the letter as “requesting approval of Gordon as Brox’s subcontractor," and further recites that the DPWs “standard procedure” was to “check the subcontractor’s qualifications” and to give approval if “the staff felt the subcontractor was qualified.” This phrasing is consistent with that of Section 19 of the subcontract, as well as with both counsels’ understanding, expressed in answer to questions at argument, that it was the subcontractor, rather then the terms of the subcontract, that required DPWs approval.

 A narrower version, prohibiting indemnification clauses in which the indemnitee is indemnified for liability caused by its own negligence, had been enacted on January 7, 1985, and would have become effective on April 7, 1985. St. 1984, c. 484, §43. The subsequent enactment broadened the prohibition, but maintained the original effective date.

 Section 1 of the subcontract provides that all "General Conditions, Drawings, Specifications, Special Provisions, Amendments and Addenda” of the “Prime Contract” between Brox and the DPW “form a part of this agreement.”

 Gordon points to the subcontractor’s certification, quoted above, which is incorporated in the subcontract, and which states that no subcontract shall be executed until DPW has determined that the certification is incorporated in it, and that any subcontract executed without DPW approval “shall be void.” This language, read literally, would void the subcontract despite DPWs approval, because it was executed prior to that approval. It is clear that the parties did not intend such a literal reading, but rather incorporated the certification, in compliance with DPW requirements, in further acknowledgment that DPW approval would be necessary for the subcontract to remain in effect.

 The subcontract contains no such provision, nor have the parties pointed to any such provision in the prime contract, which the subcontract incorporates.

 This Court does not purport to construe Maine law on this point, but for present purposes accepts Gordon’s interpretation of the cited Maine decision.