**BOISE CASCADE CORPORATION, INC., Plaintiff**

v.

**RELIANCE NATIONAL INDEMNITY CO., INC., Koch Engineering Co., Inc., and Ballard International Corp., Inc., Defendants**

No. CIV. 98–258–P–C.

United States District Court, D. Maine.

April 28, 2000.

---

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

The Amended Complaint (Docket No. 28) sets forth three counts against three Defendants. By Count I, Boise Cascade Corporation, Inc. ("Boise" or "Plaintiff") alleges breach of contract by Reliance National Indemnity Company, Inc. ("Reliance"). In Count II, Boise seeks reformation of an insurance policy issued by Reliance. In Count III, Boise alleges breach of contract by Koch Engineering Co., Inc. ("Koch") or Ballard International Corp., Inc. ("Ballard"). Currently before the Court are three summary judgment motions. Koch has moved for summary judgment with respect to Count III ("the Koch Motion") (Docket No. 22). Boise has moved for summary judgment with respect to Count I ("the Boise Motion") (Docket No. 19). Reliance has moved for summary judgment with respect to Counts I and II ("the Reliance Motion") (Docket No. 25). For the reasons that follow, the Court will grant the Koch Motion, deny the Boise Motion, and grant in part and deny in part the Reliance Motion.

## I. BACKGROUND

### A. The Underlying Litigation

In early September 1995, Marvin Woodbury, Michael Ross, James Quinn, and Lewin Dodge ("the Koch employees") were working at the Boise Cascade mill in Rumford, Maine. Plaintiff's Statement of Material Facts ("PSMF") (Docket No. 20) ¶ 3. The Koch employees were tasked with inspecting and repairing tile-lined tanks used in the papermaking process. While at the mill, the Koch employees were allegedly injured when they were exposed to "poisonous and toxic gasses." Plaintiff's Complaint (Docket No. 1) at Exhibits A, B. In 1997, the Koch employees filed suit against Boise ("the underlying litigation").[1]

Theodore H. Kirchner, James D. Poliquin, Norman, Hanson & Detroy, Portland, ME, for Plaintiff.

Jeffrey T. Edwards, Preti, Flaherty, Beliveau, Pachios & Haley, LLC, Portland, ME, Daniel Nuzzi, David Bertoni, Brann & Isaacson, Lewiston, DE, for Defendants.

1. Woodbury, Ross, and Quinn commenced one action, while Dodge later initiated a sepa-

*Id.* The complaint in the underlying litigation alleged, in pertinent part, the following:

13. As a direct and proximate result of Defendant Boise Cascade's negligence as set forth above and in other respects as will be shown at the trial of this matter, Plaintiff Marvin Woodbury was seriously and permanently injured, was and will be prevented from carrying out his usual duties, suffered and will suffer great and permanent pain of body and mind, has suffered and will suffer permanent disability, loss of function and loss of enjoyment of life, was and will be obligated to expend monies for medical and hospital care, has suffered and will continue to suffer a great and permanent loss of earnings and earning capacity, and has suffered and will continue to suffer emotional distress and damages in other respects which will be shown at the trail of this matter.[2]

*Id.*[3]

Statements by Boise employees indicate that the Koch employees were exposed to chlorine gas that escaped into their work area as a result of errors by Boise employees. Reliance Statement of Material Facts

¶¶ 37–38; Exhibit No. 54; Miscellaneous Document No. 6.[4] An investigation by the Occupational Safety and Health Administration lends further support to this conclusion. Miscellaneous Document No. 11.

### B. The Contract Between Koch and Boise

The Koch employees were working at Boise under contract. The actual terms of the contract, however, are in dispute. On June 28, 1995, Stephen Clarke, a Koch official, provided Boise with a quote for the repairs to the tile-lined tanks. Exhibit No. 9. The written quote included the following language: "The attached Field Service Group Standard Terms and Conditions are made part of this proposal" ("the Koch standard terms"). *Id.* In response to Koch's quote, on August 1, 1995, Boise sent a purchase order to Koch, which included Boise's standard terms and conditions on the reverse ("the Boise standard terms"). Exhibit No. 11. The Boise standard terms indicated that its terms would be the controlling terms.[5] *Id.* Furthermore, the Boise standard terms require a seller who is to perform work at Boise to carry certain insurance coverage and to

---

rate action against Boise. PSMF ¶¶ 1, 2. Subsequently, the two suits were consolidated. *Id.* ¶ 4.

2. Immediately prior to this paragraph, the complaint alleged the following:

11. Defendant Boise Cascade had a duty to provide Plaintiff Marvin Woodbury with a safe place within which to perform his work, and a duty to use reasonable care so as to avoid unreasonable risk of injury to Plaintiff Marvin Woodbury.

12. Defendant Boise Cascade breached said duty by:

a. Negligently and carelessly failing to keep the premises provided for the use of lawful visitors, including Plaintiff Marvin Woodbury, in a reasonably safe condition.

b. Negligently and carelessly allowing its premises provided for the use of lawful visitors, including Plaintiff Marvin Woodbury, to exist in a dangerous and defective condition; and

c. Negligently and carelessly failing to warn lawful visitors, including Plaintiff

Marvin Woodbury, of the unsafe and dangerous condition of the premises.

Plaintiff's Complaint at Exhibits A, B.

3. Although this quoted language refers only to Woodbury, it is essentially identical in each complaint filed by the Koch employees against Boise. PSMF ¶¶ 3–4.

4. The parties have submitted joint exhibits for the purposes of these motions for summary judgment. These exhibits are in two volumes, one titled "Exhibits" and another titled "Miscellaneous."

5. Specifically, the Boise standard terms state:

2. Controlling Terms: Buyer objects to the inclusion of any different or additional terms by Seller in Seller's acceptance of this PO. If Seller includes or attaches any different or additional terms in Seller's purported acceptance ... a contract of sale will result upon the terms and conditions as stated herein, without inclusion of any different or additional terms and conditions.

Exhibit No. 11.

name Boise as an additional insured on the seller's liability insurance policy.[6] *Id.* On August 7, 1995, Clarke signed the acknowledgment copy of the Boise purchase order and mailed it to Boise with a cover letter. Exhibit No. 11; Stephen Clarke Dep. at 56–57. Next to Clarke's signature on the acknowledgment copy was the language "I (WE) *Knight/Ballard KECI* hereby accept this PURCHASE ORDER solely on the terms & Conditions set forth herein."[7] Affidavit of Marine Eastman and attachment. The cover letter from Clarke indicated that "THE ACCEPTANCE OF THIS PURCHASE ORDER IS BASED ON THE ATTACHED TERMS AND CONDITIONS." Exhibit No. 11. In addition to the acknowledgment copy of the Boise purchase order, another copy of the Koch standard terms was enclosed with the letter. Exhibit 11; Clarke Dep. at 56.

### C. The Reliance Policy

From December 1, 1994, through December 1, 1995, Koch was covered by a commercial general liability insurance policy issued by Reliance ("the Reliance policy"). Exhibit No. 23. Endorsement No. 14 to the Reliance policy states the following:

*ADDITIONAL INSURED/NAMED INSURED ENDORSEMENT*

A. ADDITIONAL INSUREDS/NAMED INSUREDS SHALL INCLUDE ANY COMPANY, JOINT STOCK COMPANY, JOINT VENTURE, TRUST OR OTHER LEGAL ENTITY, OR IN-

TEREST THEREIN, HERETOFORE, NOW OR HEREAFTER CONSTITUTED FOR WHICH ANY NAMED INSURED IS RESPONSIBLE:

1. TO ARRANGE INSURANCE, OR

2. TO ADD AS AN ADDITIONAL INSURED, OR

3. TO ADD AS AN ADDITIONAL NAMED INSURED, BUT ONLY TO SUCH EXTENT (SUBJECT TO ALL . OTHER PROVISIONS OF THE POLICY) AND FOR SUCH LIMITS OF LIABILITY AND FOR SUCH COVERAGES AS THE NAMED INSURED, BEFORE LOSS, HAS AGREED:

A. BY CERTIFICATE OF INSURANCE TO PROVIDE OR, TO THE EXTENT WHICH A COURT MAY HOLD, AFTER LOSS, THAT THE NAMED INSURED IS OBLIGATED TO PROVIDE OR,

B. IN THE ABSENCE OF A CERTIFICATE OF INSURANCE, BUT CONTRACT OR AGREEMENT TO PROVIDE FOR SUCH INTEREST

B. SUCH INSURANCE AS IS PROVIDED UNDER THIS PROVISION SHALL BE PRIMARY INSURANCE, PROVISIONS OF THIS POLICY TO THE CONTRARY NOTWITHSTANDING, IF THE NAMED INSURED HAS

---

6. Again, the Boise standard terms state:

9. *Site Work.* If Seller is to perform any work ... at the office or on property of Buyer, Seller shall carry at Seller's own expense: ... (b) Contractor's Comprehensive General Liability Insurance, with limits for bodily injury and property damage of not less than $1,000,000 per occurrence, which policy shall include premises and operation coverage, blanket contractual coverage, Owner's and Contractor's protective coverage, and completed operations coverage .... Seller shall, prior to commencing work, provide Buyer with certificates evidencing all such coverages in in-

surance companies acceptable to Buyer. Such certificates shall (a) ... name Buyer, its subsidiaries, affiliates, directors, officers, and employees and additional insured with respect to liability, or any claims of liability, arising out of the work performed by Seller that affords the additional insureds the same coverage as if the additional insureds were the named insured ....
Exhibit No. 11.

7. The underlined portion of the quote was handwritten by Clarke on a blank space in the form.

AGREED TO PROVIDE PRIMARY INSURANCE.

C. IN THE ABSENCE OF SPECIFIC OBLIGATIONS TO THE CONTRARY WHICH MAY BE CONTAINED IN ANY CONTRACT OR AGREEMENT INTO WHICH THE NAMED INSURED MAY HAVE ENTERED, THE INCLUSION OF OTHER PERSONS OR ORGANIZATIONS INCLUDING JOINT VENTURES, PARTNERSHIPS, TRUSTEES OR ESTATES AS ADDITIONAL INSURED HEREUNDER SHALL BE LIMITED TO THEIR LIABILITY FOR THE CONDUCT OF THE NAMED INSURED.

Exhibit No. 23, Endorsement No. 14. The Reliance policy also includes a "TOTAL POLLUTION EXCLUSION ENDORSEMENT," which reads, in relevant part, as follows:

This Insurance does not apply to:

f. (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

. . . . .

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Reliance Statement of Material Facts ¶ 4 and second unnumbered attachment. Finally, the Reliance policy includes Exclusion 2(e), which states:

2. Exclusions.

This insurance does not apply to:

e. Employer's Liability

"Bodily Injury" to

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business;

Reliance Statement of Material Facts, first unnumbered attachment.

**D. Certificate Of Insurance**

The Boise standard terms require the seller to provide Boise with a certificate of insurance. Exhibit No. 11. Apparently Koch did not provide Boise with a certificate naming Boise as an additional insured on or about August 7, 1995, when Clarke signed and returned the Boise purchase order. However, on January 17, 1995, several months prior to the acknowledgment of the Boise purchase order, a "CERTIFICATE OF INSURANCE," ("the January 17, 1995 certificate") along with an attached endorsement entitled "ADDITIONAL INSURED," ("the attached endorsement") was issued to Boise. Exhibit No. 2; Becci Biagini Dep. at 60–62. The January 17, 1995, certificate listed Reliance as the insurance company, Ballard as the insured, and Boise as the additional insured. Exhibit No. 2. At the top of the January 17, 1995, certificate is the following language:

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.

Exhibit No. 2. Near the bottom of the Certificate is typed "BOISE CASCADE CORP., ITS DIRECTORS, OFFICERS AND AGENTS ARE NAMED AS ADDITIONAL INSUREDS PER ATTACHMENT." *Id.*

The attached endorsement, which again listed Boise as an additional insured, was not a Reliance form. Exhibit No. 2; Marla Donovan Lang Dep. at 68–69. The

attached endorsement, captioned "ADDITIONAL INSURED (Owners or Contractors)," indicates that the named additional insured (Boise) is covered only "with respect to liability arising out of the negligent acts or omissions of Named Insured in connection with operations performed for the additional insured by the Named Insured ...." Exhibit No. 2. The attached endorsement goes on in section 1.(b) to state "[t]his insurance does not apply to[ ] bodily injury or property damage arising out of any act or omission of the additional insured or any of his employees." *Id.*

### E. Insurance Demand

In response to the underlying litigation initiated by the Koch employees, on October 28, 1997, Boise wrote to Reliance, demanding that Reliance defend and indemnify Boise in the underlying litigation, as an additional insured on Reliance Policy No. MGA 0105968–02. PSMF ¶ 5. On November 19, 1997, Boise sent another letter to Reliance outlining Boise's position on its entitlement to a defense, specifically referring to the Boise purchase order. *Id.* ¶ 7. Additionally, Boise invited Reliance to participate in a mediation session with the Koch employees and later invited Reliance to comment on the proposed settlement figures resulting from the mediation session. *Id.* ¶¶ 9, 11. On December 2, 1997, Reliance responded by letter to Boise that Reliance had concluded that it had neither a duty to defend nor a duty to indemnify Boise in the underlying litigation. *Id.* ¶ 8; Exhibit No. 3. Boise eventually settled all of the claims in the underlying litigation without comment or objection from Reliance. PSMF ¶ 12. The total amount of the settlements is $416,250. *Id.*

Boise initiated the pending three-count Complaint in this matter on July 14, 1998

(Docket No. 1). Count I alleges that Reliance breached its contractual duty to defend and indemnify Boise in the underlying litigation. Count II seeks to reform the alleged insurance contract between Boise and Reliance to require Reliance to defend and indemnify Boise in the underlying litigation. Finally, Count III alleges that Koch breached its contractual obligation to name Boise as an additional insured on its insurance policy. Initially Reliance and Koch were the only Defendants in this action, but by an Amended Complaint, Plaintiff added Ballard as an additional Defendant (Docket No. 28).[8]

## II. DISCUSSION

### A. Standard

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). Once the moving party has come forward identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" which "it believes demonstrate the absence of a genuine issue of material fact," the adverse party may avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

The trial court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The court will not, however, pay heed to "con-

---

8. At some point during the time period relevant to this and the underlying litigation, Ballard was apparently either acquired by or merged with Koch. At various times during the course of this litigation, the parties have made much of the distinction between Ballard and Koch. For the purposes of resolving these

motions for summary judgment, the Court is unpersuaded that any distinction between Ballard and Koch is of moment. Throughout the remainder of this opinion, the Court refers to Ballard and Koch collectively as "Koch."

clusory allegations, improbable inferences [or] unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990). The role of the trial judge at the summary judgment stage "is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

In addressing each motion for summary judgment, the Court will apply Maine law. A federal court exercising diversity jurisdiction must apply the choice-of-law rules of the state in which it sits. *See Maine Surgical Supply Co. v. Intermedics Orthopedics, Inc.*, 756 F.Supp. 597, 600 (D.Me. 1991) (citations omitted). Under Maine law, "the rights and duties of the parties with respect to an issue in contract are to be determined at the forum level by the local law of the state which, with respect to that particular issue, has the most significant relationship to the transaction and the parties." *Baybutt Construction Corp. v. Commercial Union Ins.*, 455 A.2d 914, 918 (Me.1983), overruled on other grounds, *Peerless Ins. Co. v. Brennon*, 564 A.2d 383 (Me.1989). In this case, Maine law is applicable because the subject matter of the contract between Koch and Boise was work to be performed in Maine. Additionally, the potentially insured risk—activity on Boise's property—was located in Maine. *Baybutt*, 455 A.2d at 919 ("[I]t may be assumed that [the parties] entered into the insurance contract with the expectation and implied intent that the local law of the state where the risk is to be located would be applied to determine issues that may arise under the contract.").[9]

### B. The Koch Motion for Summary Judgment

Koch has moved for summary judgment on Count III of the Amended Complaint, which alleges that Koch breached its contractual duty to name Boise as an additional insured on Koch's liability policy. Koch's arguments fall into two general categories. First, Koch argues that the Boise standard terms are not part of the contract between Koch and Boise, such that Koch has no contractual obligation to name Boise as an additional insured—because such a duty could arise only if the Boise standard terms control. In the alternative, Koch argues that even if the Boise standard terms control, as a matter of law, the language is not sufficiently specific and clear evidence of a mutual intention for Koch to insure Boise for Boise's negligence.

Turning first to Koch's arguments that address contract formation, it is important to recall that for the purposes of the Koch Motion, Koch bears the burden of demonstrating to the Court the absence of a genuine issue as to the material facts, and facts will be viewed in the light most favorable to the nonmoving party, Boise.

■ Both Boise and Koch agree that they formed a contract for the repair of tanks in Rumford, but they vehemently disagree as to the terms of the contract. Koch posits two factual scenarios whereby the Boise standard terms are not part of the contract and whereby Koch would have no duty to name Boise as an additional insured. First, Koch argues that the estimate it provided to Boise, which had the Koch terms attached, constituted a valid offer which created in Boise the power to accept. Koch continues by arguing that Boise accepted Koch's offer when Boise sent to Koch a Boise purchase order that expressly referenced the Koch estimate. Under this construction, Koch concludes that, by means of the Boise purchase order, which referenced the Koch estimate, Boise accepted Koch's standard terms which had been attached to the estimate. Therefore, Koch argues, Koch's standard terms control the contract and, according-

9. Furthermore, none of the parties have suggested that the law of any jurisdiction other than Maine should be applied, and each party has relied on Maine law in its briefing.

ly, Koch has no duty to name Boise as an additional insured.

Typically, estimates are not treated as offers, but, instead, they are usually understood to be invitation to offers or the initiation of negotiation. *See* 17A Am. Jur.2d *Contracts* § 45. Under some circumstances, however, an estimate can serve as an offer creating in the recipient the power of acceptance. *Id.* But to treat an estimate as an offer, the language of the estimate, and the context of the estimate in the negotiations between the parties "must be so definite as to constitute a clear meeting of the minds." *Taft–Peirce Manufacturing Co. v. Seagate Technology, Inc.*, 789 F.Supp. 1220, 1223 (D.R.I.1992). "[W]hether a price quote may be considered an offer in any given case is a question of fact dependent on the nature of the particular acts or conduct and the circumstances surrounding the transaction." *Maurice Elec. Supply Co., Inc. v. Anderson Safeway Guard Rail Corp.*, 632 F.Supp. 1082, 1087 (D.D.C.1986).

In response to this argument, Boise points to its purchase order as the offer, and Koch's signing and returning to Boise the acknowledgment copy of the purchase order as acceptance of the Boise standard terms. "It is the submission of a purchase order by a buyer in response to a price quote that usually constitutes the offer." *Id.* Indeed, Boise rightly points out that the purchase order is the only document signed by both Boise and Koch. If Koch truly believed at the time that the estimate was the offer and the purchase order was the acceptance, why would Koch sign and return the acknowledgment copy of the Boise purchase order?

Koch has failed to meet is burden of demonstrating that there is no genuine issue of material fact with respect to its position that the Koch estimate was an offer. A reasonable person could conclude from the record that the estimate was not an offer, and a jury could reasonably conclude that the Boise purchase order represents the entire contract between the par-

ties. Because Koch has not satisfied its burden, it is not entitled to summary judgment under this theory.

Koch's second contract formation argument is similarly unsuited for summary judgment. Koch advances the theory that the documents shuttled between the parties demonstrate the absence of a meeting of the minds such that the contract was formed by the actions, rather than the words, of the parties. This proposition necessarily requires an inquiry into the intent of the contracting parties. Generally speaking, when the intent of the parties is at issue, summary judgment is not appropriate. *See, e.g., St. Agatha Federal Credit Union v. Ouellette*, 1998 ME 279, 722 A.2d 858; *Tondreau v. Sherwin– Williams Co.*, 638 A.2d 728 (Me.1994). Koch's argument regarding a lack of a meeting of the minds again does not entitle it to summary judgment as to Count III.

As a rule, contested issues surrounding contract formation are reserved for the fact-finder. *See Bourque v. Federal Deposit Ins. Corp.*, 42 F.3d 704, 708 (1st Cir.1994); *Ismert and Assoc., Inc. v. New England Mut. Life Ins. Co.*, 801 F.2d 536, 540–41 (1st Cir.1986). While there are exceptions to the rule, this case is not one of them.

Koch's final argument in support of its motion for summary judgment supposes that even if the Boise standard terms are controlling, such terms do not require Koch to insure Boise for Boise's negligence because the Boise standard terms lack the requisite specificity and clarity. Koch concludes that, as a matter of law, it does not have a duty to insure damages arising out of Boise's negligence.

Koch points to a series of cases that stand for the proposition that contractual language that seeks to indemnify a party for its own acts of negligence must be expressed "clearly and unequivocally" in the terms of the contract. *See Emery Waterhouse Co. v. Lea*, 467 A.2d 986, 993

(Me.1983). This rule has been extended beyond indemnification claims to include contractual requirements to name a party as an additional insured. *See Fowler v. Boise Cascade Corp.,* 739 F.Supp. 671, 675–76 (D.Me.1990) *(Fowler I ), aff'd* 948 F.2d 49 (1st Cir.1991) *(Fowler II ).* The *Fowler I* and *Fowler II* decisions are particularly relevant here because Boise has made no indemnification claim against Koch, but in Count III, Boise has alleged that Koch breached a contractual duty to provide insurance coverage for Boise.

■ In *Fowler I,* this Court, interpreting Maine law, concluded that there were statutory and common law principles requiring that insurance procurement clauses "should be strictly read if they are claimed to be operative to waive an employer's immunity under the Workers' Compensation Act or if they are invoked to require a party to indemnify against its own negligence." *Fowler I,* 739 F.Supp. at 676. In doing so, this Court determined that these two rules of interpretation, which are well-settled with respect to indemnification claims, applied equally to insurance procurement clauses. *Id.*

Applying the rules of *Fowler I* to the case at bar, the Court begins with a straightforward factual analysis. For the purposes of this argument, Koch assumes that the Boise standard terms are the controlling contractual terms. The Boise standard terms include "an express waiver of immunity under any applicable Workers' Compensation laws." Exhibit No. 11 ¶ 9. Accordingly, a strict reading of the Boise standard terms reveals an express waiver sufficient to satisfy the first *Fowler I* standard with respect to waiver of workers' compensation immunity.[10]

The second requirement set forth in *Fowler I* with respect to insurance procurement clauses is not so easily resolved in this case. "Indemnification clauses that purportedly indemnify a party against injuries caused by that party's own negligence 'are looked upon with disfavor by the courts, and are construed strictly ....' " *Fowler I,* 739 F.Supp. at 675 (quoting *Emery,* 467 A.2d at 993).

> It is only where the contract *on its face by its very terms clearly and unequivocally* reflects a mutual intention on the part of the parties to provide indemnity for loss caused by negligence of the party to be indemnified that liability for such damages will be fastened on the indemnitor, and *words of general import* will not be read as expressing such an intent and establishing *by inference* such liability.

*Emery,* 467 A.2d at 993 (emphasis added). In *Fowler I,* this Court concluded that the rule set forth by the Maine Law Court in *Emery* with respect to indemnification applies equally to insurance procurement clauses. *See Fowler I,* 739 F.Supp. at 676.

Koch posits that because Boise is seeking coverage for its own negligence, *Fowler I* requires that the Boise standard terms be read strictly, and should require insurance only for Boise's negligence if the "very terms clearly and unequivocally reflect[ ] a mutual intention on the part of the parties" to do so. *Emery,* 467 A.2d at 993. Koch concludes that because the Boise standard terms do not contain such language, it is entitled to summary judgment. Boise counters by arguing that it has not been established that Boise is the sole negligent party in the underlying litigation, such that a strict reading of the Boise standard terms is not required. Alternatively, Boise argues that even if a strict construction is appropriate, the language of the Boise standard terms is sufficient to meet the requirements set forth in *Emery* and *Diamond,* as collected in *Fowler I.*

---

**10.** The requirement that a contractual waiver of an employer's workers' compensation immunity could be achieved only by clear and specific language was established by the Maine Law Court in *Diamond Int'l Corp. v. Sullivan and Merritt, Inc.,* 493 A.2d 1043, 1048 (Me.1985).

Turning first to Boise's factual counter argument, Koch must demonstrate the absence of a genuine issue of material fact with respect to Koch's assertion that Boise seeks to recover for its own negligence. In support of the proposition that Boise was the sole negligent party in the events that spawned the underlying litigation, Koch points to several documents in the record. First, Koch points to the Occupational Safety and Health Administration investigation which confirms what Boise admits—that the plaintiffs in the underlying litigation were injured when they were exposed to chlorine gas unintentionally released by Boise employees. Exhibit No. 49; Miscellaneous Document No. 11. Additionally, Koch relies on an internal memorandum prepared by Boise's legal department in regard to the underlying litigation. Exhibit No. 54. Under the heading *"LIABILITY ANALYSIS,"* the memorandum indicates that "our investigation over the last two years has failed to turn up any facts which provide a solid defense to defeat these claims." Exhibit No. 54 at 2.[11] Boise counters by suggesting that "[i]t is a perfectly legitimate conclusion *on the record* that the primarily negligent individuals were the Koch supervisors who failed to require that their employees follow established safety protocols for this areas of the Mill." Boise's Memorandum in Opposition to Koch's Motion for Summary Judgment (Docket No. 34) at 13 (emphasis added). Yet the only record source that could remotely support this assertion states:

> Boise does not agree that the injuries to these employees were not caused by the negligence of Koch in failing to have its employees follow established safety pro-

tocols. Koch has not asserted, or provided record support for the contention that Koch was not negligent in this latter respect.

Plaintiff Boise Cascade's Response to Koch's Statement of Material Facts ¶ 32. Boise has not provided this Court with a single record citation in support of its proposition that Koch employees were negligent in the events leading to the underlying litigation. Boise's effort to place the burden on Koch to prove that its employees were not negligent is improper. These documents, coupled with the inability of Boise to point to any evidence in the record to the contrary, demonstrate that there is no genuine issue of fact regarding Boise's sole negligence in the events that generated the underlying litigation. Boise's suggestion that the Koch employees were negligent is the type of "unsupported speculation" that will not defeat a motion for summary judgment. *See Medina–Munoz,* 896 F.2d at 8. Accordingly, as Koch argues, a strict reading of the Boise standard terms, as set forth in *Emery,* is required.

■ Boise's final counter argument strikes at the heart of the Law Court's decision in *Emery.* Boise contends that the express waiver of the workers' compensation immunity in the Boise standard terms serves to satisfy the requirements of *Emery.* In other words, Boise suggests that the workers' compensation waiver acts as an express agreement by Koch to insure Boise for Boise's own negligence. This is true, according to Boise, because Koch's employees could sue Boise only for some allegedly negligent act by Boise. Therefore, Koch's agreement to waive its

---

11. Boise offers vague arguments suggesting that these two documents are inadmissible evidence and should, therefore, be disregarded by the Court, apparently on the ground that it is not established that whomever drafted these documents did so on the basis of personal knowledge. With respect to the OSHA report, the Court is satisfied that it would be admissible under Federal Rule of Evidence 803(8). As to the memorandum prepared by Boise's legal department, the statement "our investigation over the last two years has failed to turn up any facts which provide a solid defense to defeat these claims" strongly implies that the declarant predicates his or her statement on personal knowledge. More to the point, Boise offers no evidence contradicting, in this record, the proposition that its employees alone acted to accidently release the chlorine gas that injured the Koch employees.

workers' compensation immunity implicitly included an agreement by Koch to insure Boise for its negligent acts that injured Koch employees.

The Court rejects Boise's argument. While it may be true that a wavier by Koch of its workers' compensation immunity—in the form of the Boise standard terms—*implies* an agreement to insure Boise for Boise's negligence, the Court reads *Emery* to require more. The Maine Law Court's decision in *Emery* dictates a requirement of an explicit agreement to insure a party for its own negligence. *Emery,* 467 A.2d at 993. Indeed, the Law Court expressly rejected the possibility of establishing an agreement to insure a party for its negligence by "inference." *Id.* Furthermore, Boise's argument essentially seeks to merge the statutory requirement that workers' compensation immunity waivers must be explicit, set forth in *Diamond,* with the distinct common law requirement, set forth in *Emery,* that contracts to insure a party for its own negligence must also be explicit. Such a merger would be entirely inconsistent with this Court's decisions in *Fowler I* and *Gatley v. United Parcel*

*Service, Inc.,* 662 F.Supp. 200 (D.Me. 1987).[12] Furthermore, Boise has not cited, nor has the Court discovered, any other source of Maine law that supports Boise's contention that the distinct requirements established by the Law Court in *Diamond* and *Emery* can be collapsed into each other—such that the satisfaction of the rule in *Diamond* serves, by implication, to satisfy the rule in *Emery.* Therefore, the Court rejects Boise's argument. The language in the Boise standard terms fails to meet the requirements plainly set forth in *Emery.* Accordingly, Koch's Motion for Summary Judgment with respect to Count III will be granted.[13]

## C. The Boise Motion for Summary Judgment

Plaintiff Boise has moved for summary judgment with respect to Count I of the Amended Complaint. Count I alleges that Reliance breached its duty to defend Boise in the underlying litigation. As a remedy, the Boise Motion argues that Boise is entitled to the cost of defending the underlying litigation, the money paid to settle the claims in the underlying litigation, and the costs of this litigation.[14]

**12.** *Gatley* is the factual counterpart to *Fowler I*. Whereas in *Fowler I,* the contract failed to expressly waive workers' compensation immunity or expressly evidence a mutual intent to insure a party for its own negligence, in *Gatley,* the contract included express and distinct language satisfying each requirement. *Gatley,* 662 F.Supp. at 201–02. In both *Gatley* and *Fowler I,* this Court treated each of these requirements separately. Accordingly, the Court is unwilling to adopt Boise's position that a waiver of workers' compensation immunity can satisfy the requirements of *Emery*.

**13.** By this analysis, the Court does not suggest that Koch had no duty to insure Boise under the Boise standard terms. If the Boise standard terms control, Koch may have had a duty to name Boise as an additional insured on its insurance policy. However, as this Court decided in *Fowler I,* the duty to provide insurance generally is distinct from the duty to provide coverage for an insured's negligence. This distinction was properly recognized by the Court of Appeals for the First

Circuit in its decision affirming this Court's opinion in *Fowler I. See Fowler II,* 948 F.2d at 54–55 and n. 1. While Koch may have had a duty to procure insurance for Boise under the Boise standard terms, those terms do not create a duty for Koch to indemnify Boise for its negligence.

**14.** Although not necessary to resolve Boise's Motion, the Court notes that, as part of its Motion, Boise argues that if Reliance is found to have breached a duty to defend, then Boise is entitled to have the costs incurred in defending the underlying litigation, as well as the settlement amounts, paid by Reliance. In support of the argument that Reliance must pay the settlement costs as a result of breaching the duty to defend, Boise relies on this Court's decision in *Anderson v. Virginia Surety Co., Inc.,* 985 F.Supp. 182 (D.Me.1998). In *Anderson,* this Court held that an insurer who breached a duty to defend was not entitled to litigate the duty to indemnify where the underlying litigation had already been settled and that settlement was reasonable and made in good faith. *Id.* at 189–90.

Under Maine law, the duty to defend is determined by the familiar comparison test, under which the court compares the allegations of the underlying complaint with the provisions of the insurance policy. *See Maine State Academy of Hair Design, Inc. v. Commercial Union Ins. Co.,* 699 A.2d 1153, 1156 (Me.1997); *N E Properties, Inc. v. Chicago Title Ins. Co.,* 660 A.2d 926, 927 (Me.1995); *Mullen v. Daniels,* 598 A.2d 451, 453 (Me.1991). The question of whether an insurer has a duty to defend an insured is a question of law. *See Commercial Union Ins. Co. v. Royal Ins. Co.,* 658 A.2d 1081, 1082 (Me.1995) (citing *Baywood Corp. v. Maine Bonding & Cas. Co.,* 628 A.2d 1029, 1030 (Me.1993)).

■ In a typical duty-to-defend case, the terms of the insurance policy are well settled such that the dispute focuses on the language of the complaint. Specifically the cases tend to address whether the complaint can be read in such a way as to obligate the insurers under the policy. *See, e.g., Foundation for Blood Research v. St. Paul Marine and Fire Ins. Co.,* 1999 ME 87, 730 A.2d 175ʹ (1999); *Endre v.*

*Niagara Fire Ins. Co.,* 675 A.2d 511 (Me. 1996). Here however, the Court cannot reach the comparison test, which, as a pure question of law, is well suited for summary judgment, because it has not yet been established whether Reliance is the "insurer" of Boise. Reliance undeniably has a contractual relationship with Koch whereby Koch is the insured and Reliance is the insurer. But Boise and Reliance have no such direct contractual relationship. Reliance can be Boise's "insurer" only if the terms of the contract between Koch and Boise create an insurer/insured relationship between Reliance and Boise. As the Court indicated above, the terms of the contract between Koch and Boise cannot be determined for the purpose of summary judgment.[15] It follows, necessarily, that the existence of a contractual relationship between Reliance and Boise also cannot be determined for the purpose of summary judgment. From that, it logically follows that the Court cannot apply the comparison test at this time because the threshold issue as to whether Reliance is an insurer of Boise cannot be determined.

The Maine Law Court, however, has expressly rejected this Court's analysis in *Anderson.* In *Elliott v. Hanover Ins. Co.,* 1998 ME 138, 711 A.2d 1310, the Law Court held that "[a]n insurer that breaches its duty to defend therefore is not estopped from asserting noncoverage as a defense in a subsequent action brought by the insured or the insured's assignee." *Id.* at 1313. Immediately following this quoted language, the Maine Law Court expressly rejected this Court's approach in *Anderson. Id* at n. 3. The Maine Law Court did note, however, that the insurer would bear "the burden of proving that the claim was not within the policy's coverage when it wrongfully declines to defend a claim." *Id.* at 1313–14. Apparently, in a case such as this, if Reliance is found to have breached the duty to defend, the *Elliott* standard will require litigation of many of the legal issues raised but not decided by the underlying litigation which was settled long ago. This may be necessary because the duty to indemnify could turn on such facts as whether or not Koch employees were contributorily negligent, facts apparently not determined as part of the settlement. While the valid policy reasons for not revisiting the previously settled underlying litigation are obvious (*see, e.g.,*

*Travelers Indem. Co. v. Dingwell,* 414 A.2d 220, 227 (Me.1980)), the Court has no choice but to apply the rule set forth in *Elliott,* should it be determined at a later date that Reliance breached a duty to defend Boise in the underlying litigation.

15. In Part II B, *supra,* the Court set forth why Koch could not demonstrate that its terms control the contract between Koch and Boise for the purposes of summary judgment. The same conclusion applies here, even though here, under Boise's Motion for Summary Judgment, the facts must be viewed in the light most favorable to Koch and Reliance—not in favor of Boise as was the case in Part II B. Indeed, viewing the facts in favor of Koch and Reliance, Boise cannot demonstrate that the Boise standard terms controlled the contract between Boise and Koch. Taking the facts most favorably to the nonmoving parties, Koch's estimate—and the accompanying terms—would be the offer accepted by Boise's purchase order. Boise cannot, for the purposes of its summary judgment motion, demonstrate that the Boise standard terms were the sole controlling terms of the contract between Boise and Koch.

Couched in contractual terms, recalling that at its core Count I alleges a breach of contract, it is axiomatic that prior to prevailing on a breach of contract claim, the complainant must first establish the existence of a valid contract. Here Boise is alleging that Reliance breached its contractual duty to defend. The Court is unable to find, as a matter of law, that Reliance breached a contractual duty without first being satisfied that a contractual relationship existed.[16]

The many Maine Law Court decisions addressing the comparison test evidence a strong policy bias of resolving duty-to-defend issues promptly and without fact-finding. In particular, the Maine Law Court has explained:

> If we were to look beyond the complaint and engage in proof of actual facts, then the separate declaratory judgment actions ... would become independent trials of the facts which the [insured] would have to carry on at his expense .... We see no reason why the insured, whose insurer is obligated by contract to defend him, should have to try the facts in a suit against his insurer in order to obtain a defense.

*Travelers Indem. Co. v. Dingwell*, 414 A.2d 220, 227 (Me.1980). This Court's conclusion that additional fact-finding is necessary in this case before the comparison test may be applied is entirely consistent with the meritorious policy objectives set forth by the Law Court in *Dingwell*. First, without some factual predicate to establish a contractual relationship between Boise and Reliance, the Court cannot assume that these parties are, respectively, an insured and an insurer as the comparison test requires. Furthermore, at this time, it has not been established that Reliance is an "insurer [that] is obligated by contract to defend" Boise. *Id*. Finally, the additional fact-finding required in this case is not the type eschewed by the Maine Law Court's rigorous adherence to the comparison test. The additional fact-finding needed here surrounds the formation of the contract between Koch and Boise, and no fact-finding relative to the underlying litigation will be required before the Court applies the comparison test.[17]

Accordingly, Boise has failed to meet its burden of showing the absence of genuine issues of material fact such that the Court may grant its Motion. Specifically, a genuine issue remains as to whether a contractual relationship between Boise and Reliance exists. Therefore, Boise's Motion will be denied.

### D. The Reliance Motion for Summary Judgment

Reliance has moved for summary judgment with respect to Count I and Count II of the Amended Complaint. Count I alleges Reliance breached its duty to defend and indemnify Boise in the underlying litigation. Count II seeks reformation of the Reliance policy covering Boise.

Turning first to Reliance's position regarding Count I, to the extent that Reliance's arguments that it has no duty to defend or indemnify Boise with respect to the underlying litigation are predicated on conclusions regarding the terms of the

---

**16.** In its Motion, Boise contends that the contractual dispute between it and Koch need not be reached if the Court first finds Reliance has breached its duty to defend. If the Court so finds, Boise continues, Boise will voluntarily dismiss any claims against Koch because Boise will have achieved a judgment against Reliance for the defense and settlement of the underlying litigation. While such a direct route to the resolution of this dispute is undoubtedly enticing, the Court simply cannot assume a contract exists and then proceed to consider the issue of breach. Furthermore, as discussed above, even if Boise eventually prevails on its breach of a duty-to-defend claim against Reliance, such a judgment would not resolve the duty to indemnify, such that additional litigation would be necessary to resolve Boise's entitlement to the amounts it paid to settle the underlying litigation. *See Elliott*, 1998 ME 138, 711 A.2d at 1313–14.

**17.** Indeed, if it is later determined that there is no contractual duty between Reliance and Boise, the Court will never reach the comparison test.

contract between Koch and Boise, those arguments fail as a predicate for summary judgment. They fail for the same reasons that Boise's Motion for Summary Judgment fails. As discussed in Part II B and Part II C above, there are unresolved factual disputes surrounding the formation of the contract between Koch and Boise. Accordingly, any of Reliance's arguments founded on particular contractual language fail to earn Reliance summary judgment as to Count I. To that end, Reliance's argument based on the incorporation by reference of the January 17, 1995, certificate into the contract between Koch and Boise several months later fails. The question of whether the January 17, 1995, certificate is incorporated by reference into the contract between Koch and Boise is disputed factually and cannot, therefore, be the basis for summary judgment on Count I in favor of Reliance.

There is, however, a subset of Reliance's arguments, with respect to Count I, that the Court must analyze. Specifically, the Court will consider those of Reliance's arguments that posit that application of the comparison test demonstrates that Reliance has no duty to defend Boise, even if it is assumed that the contract between Koch and Boise was formed in a manner most favorable to Boise. The Court identifies three of Reliance's arguments that could defeat Count I even assuming the best-case factual scenario for Boise with respect to contract formation. First, Reliance contends that Exclusion 2e to Section 1, Coverage A of Koch's insurance policy precludes a duty to defend when compared with the complaints in the underlying litigation. Next, Reliance argues that the Total Pollution Exclusion endorsement to Koch's insurance policy, when compared with the complaint in the underlying litigation, bars recovery by Boise. Finally, Reliance argues that either the per-occurrence deductible or the exhaustion of the policy's aggregate bars recovery by Boise. All three of these arguments flow from the language of the Reliance policy and are not predicated on any particular factual con-

clusion relative to the formation of a contract between Boise and Koch, except to assume that Boise is an additional insured on Koch's insurance policy. Accordingly, the Court will consider these arguments regardless of the Court's analysis in Part II B and Part II C above.

■ Reliance begins by arguing that Exclusion 2(e) eliminates any duty to defend under the comparison test. Exclusion 2(e) reads as follows:

2. Exclusions.

This insurance does not apply to:

e. Employer's Liability

"Bodily Injury" to

(1) An "employee" of the insured arising out of and in the course of:

  (a) Employment by the insured; or

  (b) Performing duties related to the conduct of the insured's business.

Reliance Statement of Material Facts, first unnumbered attachment. Reliance contends that this exclusion serves to bar Boise's coverage with respect to the underlying litigation. Specifically, Reliance avers that coverage is excluded for bodily injury to employees of Koch—the insured.

Reliance's invocation of Exclusion 2(e) fails. Assuming, again, that Koch has a duty to name Boise as an additional insured, for the purposes of Exclusion 2(e), Boise—not Koch—is "the insured." The Koch employees are not employees of *"the* insured," Boise, such that Exclusion 2(e) does not apply in this case. Reliance's effort to read Exclusion 2(e) as "an employee of *an* or *any* insured" is inconsistent with Maine law. *See Johnson v. Allstate Ins. Co.,* 1997 ME 3, 6–7, 687 A.2d 642, 644 (in insurance policy "an" insured is the equivalent of "any" insured and both are distinct from "the" insured).

■ Reliance next points to another policy exclusion that it argues denies Boise's coverage for the claims arising out of the

underlying litigation. The Total Pollution Exclusion in the policy states that:

> This Insurance does not apply to:
>
> f. (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.
>
> .    .    .    .    .
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

Reliance Statement of Material Facts ¶ 4 and second unnumbered attachment. Reliance argues that because the injuries suffered by the Koch employees were the result of a chlorine gas leak, the Total Pollution Exclusion eliminates any duty on the part of Reliance to defend or indemnify Boise.

Subsequent to the submission of this motion, the Court of Appeals for the First Circuit decided *Nautilus Ins. Co. v. Jabar*, 188 F.3d 27 (1st Cir.1999). Construing insurance policy language identical to this Total Pollution Exclusion, the *Nautilus* court affirmed the lower court's finding that this language was ambiguous as a matter of Maine law. *See id.* at 29–30. This is true because "an ordinarily intelligent insured could reasonably interpret the pollution exclusion clause as applying only to environmental pollution." *See id.* at 30. Because the provision is ambiguous as a matter of law, it will be construed in favor of the insured.[18] *See id.* at 31 (citing *Geyerhahn v. United States Fidelity & Guaranty Co.*, 724 A.2d 1258, 1261 (Me. 1999)). Accordingly, Reliance is not entitled to summary judgment on Count I based on the Total Pollution Exclusion.

■ Finally, with respect to Count I, Reliance argues—in two brief paragraphs—that either the policy's deductible or the policy's aggregate limit precludes any duty on the part of Reliance to defend Boise. The court find both arguments to be without merit. With respect to the policy's $3 million deductible, there is some dispute as to whether it applies to Boise, as an additional insured, at all.[19] The Court need not explore that point, however. It is enough that the amount of damages was impossible to determine when Boise sought a defense from Reliance. While perhaps unlikely, it is not inconceivable that four plaintiffs seeking damages for injuries from exposure to chlorine gas could recover over $3 million. That Reliance now knows the claims settled for significantly less does not entitled Reliance to summary judgment with respect to Count I.

Reliance's argument with respect to policy limits is equally unpersuasive. Reliance contends it had no duty to defend Boise because the policy's $7.5 million aggregate limit had been exhausted on June 10, 1997. First, Boise responds that, despite extensive efforts during discovery in this case, information regarding exhaustion of the aggregate limit was not provided by Reliance to Boise until June 3, 1999, one day prior to the deadline for filing summary judgment motions in this case. It is undisputed that Reliance did not rely on the aggregate limit when it declined to defend Boise. Miscellaneous Exhibit 1H. Indeed, Reliance now contends that because such information was maintained by another company, Reliance could not confirm that the aggregate limit was exhausted on June 10, 1997, until nearly two years after that date. The comparison test re-

---

**18.** For the purposes of this argument, Boise is presumed to be the insured rather than the potential insured.

**19.** At his deposition, James Fitzpatrick, designated by Reliance in response to a notice of deposition per Fed.R.Civ.P. 30(b)(6), implied that the policy deductible does not apply to an additional insured like Boise. Fitzpatrick Dep. at pp. 16–17.

quires the insurer to decide whether or not to defend based on the information it has at that time. *Cf. Maine Mut. Fire Ins. Co. v. Gervais,* 1999 ME 134, 745 A.2d 360, 362. Reliance did not—indeed, Reliance apparently could not—rely on exhaustion of the policy aggregate when it declined to defend Boise. This tardy justification for denying a defense to Boise in the underlying litigation fails. Because the Court is unpersuaded by any of Reliance's arguments, the Court will deny Reliance's Motion for Summary Judgment with respect to Count I of the Amended Complaint.[20]

In addition to its motion with respect to Count I, Reliance seeks summary judgment with respect to Count II of the Amended Complaint. By Count II, Boise seeks to reform the insurance policy by which Reliance insures Boise if it is determined that the Reliance policy does not cover Boise with respect to the underlying litigation. Reliance offers two grounds upon which it is entitled to summary judgment on Count II. First, Reliance contends that because Boise is not a party to the insurance contract between Reliance and Koch, Boise lacks standing to seek reformation of that contract. Alternatively, Reliance argues that even if Boise does have standing, there is no evidence supporting mutual mistake on the part of Reliance and Koch—a necessary prerequisite to the remedy of reformation.

Count II of the Amended Complaint reads as follows:

> If the insurance policy issued by Reliance covering Boise as an additional insured does not, as actually written, provide Boise with defense and/or indemnification for the [underlying litigation], Boise is entitled to reformation of that policy to provide Boise with the coverages consistent with the contractual insurance procurement obligations ... under the contract between Koch ... and Boise.

Amended Complaint ¶ 28. Taken alone, this language from the Amended Complaint is unclear to the extent that it refers to the "insurance policy issued by Reliance covering Boise ...." Taking the facts in the light most favorable to Boise, the Boise standard terms place a contractual duty upon Koch to name Boise as an additional insured on Koch's insurance policy, which is issued by Reliance. Even from this best-case factual scenario, Reliance can hardly be said to have issued an insurance policy specifically covering Boise, as the Amended Complaint suggests.

In Boise's Memorandum in Opposition to Defendant Reliance's Motion for Summary Judgment (Docket No. 35), Boise clarifies its claim for reformation. Specifically, Boise indicates that it does not seek to reform any portion of the Reliance policy. Boise Cascade's Memorandum in Opposition to Defendant Reliance's Motion for Summary Judgment at 21. Instead, Boise seeks to reform the January 17, 1995, certificate provided by Koch to Boise, so that the certificate actually provided would be the same as the certificates Koch had provided to Boise prior to the

---

**20.** Although it would appear at first blush that the logic by which Koch obtains summary judgment on Count III would also apply to Reliance's efforts to obtain summary judgment with respect to Count I, a closer examination reveals the fallacy of this proposition. Koch's successful argument does not require a finding that Koch had no duty to name Boise as an additional insured. Instead, Koch obtains summary judgment on the grounds that there is no genuine issue of material fact that the injuries sustained by the Koch employees resulted from Boise's negligence, and that any contract between Koch and Boise failed to specifically memorialize a mutual intent that Koch would insure Boise for Boise's negligence. It may very well be that Koch had an obligation to name Boise as an additional insured. Accordingly, Reliance may have had a derivative duty to defend. That the current record does not generate a genuine issue of material fact with respect to Boise being the sole negligent cause of the injuries to the Koch employees could conceivably provide Reliance with a winning argument with respect to its duty to indemnify Boise. It alone does not, however, absolve Reliance from the broader duty to defend Boise.

January 17, 1995, certificate. *Id.* Although the Boise standard terms—if they are the contract terms—required Koch to provide a certificate to Boise evidencing that Koch had named Boise as an additional insured—which the Boise standard terms also require—it is undisputed that Koch never sent Boise a certificate with respect to this contract.

As the Court now understands Count II, Boise seeks to reform the January 17, 1995, certificate, not the Koch insurance policy issued by Reliance. Under this theory, Reliance's argument that Boise lacks standing to seek reformation is without merit. By Count II, Boise seeks to reform the January 17, 1995, certificate which—potentially—is part of the contract between Boise and Koch. Assuming for the moment that the January 17, 1995, certificate is part of the contract between Boise and Koch, obviously Boise would have standing to seek reformation of that certificate. Reliance, however, offers an alternative argument for summary judgment with respect to Count II as it has now been recast by Boise. Reliance contends that the January 17, 1995, certificate is not part of the contract between Boise and Koch because it was issued several months prior to the formation of this contract, and, therefore, the January 17, 1995, certificate is incapable of being reformed.

■ Reformation is an equitable remedy whereby a court may, in essence, rewrite the terms of a contract to conform with the mutual intent of the parties. The need for reformation arises where the contracting parties reach an agreement, but the contract language fails to record the agreement accurately. In other words, a court may reform a contract if the parties made a mutual mistake. *See Yaffie v. Lawyers Title Ins. Corp.,* 1998 ME 77, 710 A.2d 886, 888. Reliance contends that any mutual mistake between Boise and Koch with respect to the contract formed sometime in August 1995 could not possibly

relate to the January 17, 1995, certificate issued several months earlier.

■ The Court can conceive of at least one factual scenario in which reformation of the January 17, 1995, certificate could conceivably be appropriate. If, at the time the contract between Boise and Koch was formed, both parties intended the January 17, 1995, certificate to be incorporated by reference into the contract, and both parties mistakenly believed that the January 17, 1995, certificate was the same as the certificates Koch had previously issued to Boise, then reformation of the January 17, 1995, certificate to read like the previously issued certificates could be an appropriate equitable remedy. However, even if Boise were able to prove a mutual mistake by clear and convincing evidence—as is required under Maine common law—in order to be entitled to reformation, the mistake "must be material to the transaction," and it must "touch the subject matter of the bargain and not merely be collateral to it." *See id.* (quoting *Poling v. Northup,* 652 A.2d 1114, 1116 (Me.1995)); *Interstate Indus. Uniform Rental Service Inc. v. Couri Pontiac, Inc.,* 355 A.2d 913, 918 (Me.1976). The Court is satisfied that even if Boise were able to prove by clear and convincing evidence that Boise and Koch labored under a mutual mistake regarding the contents of the January 17, 1995, certificate relating to insurance coverage, the Court finds as a matter of law that such a mistake was collateral to the subject matter of the bargain—to have Koch inspect and repair a tile-lined tank used in the papermaking process. *See Interstate Indus. Uniform Rental Service, Inc.,* 355 A.2d at 917–18 (holding that whether mutual mistake is collateral to the contract is a matter of law for the court to decide). Accordingly, Boise cannot obtain reformation of the January 17, 1995, certificate, and Reliance's Motion for Summary Judgment with respect to Count II will be granted.[21]

21. Although Count II does not specifically

identify against which Defendant it seeks re-

### III. CONCLUSION

Accordingly, it is **ORDERED** that Koch's Motion for Summary Judgment with respect to Count III be, and it is hereby, **GRANTED**. It is further **ORDERED** that Boise's Motion for Summary Judgment with respect to Count I be, and it is hereby, **DENIED**. It is further **ORDERED** that Reliance's Motion for Summary Judgment with respect to Count I be, and it is hereby, **DENIED**, and with respect to Count II be, and it is hereby, **GRANTED**. Finally it is **ORDERED** that summary judgment in favor of Koch with respect to Count II be, and it is hereby, **GRANTED** *sua sponte*.

covery, the analysis regarding materiality works in favor of both Defendants. Koch did not move for summary judgment with respect to Count II—presumable because Koch did not believe Boise sought relief against Koch by Count II. Accordingly, the Court will grant *sua sponte* summary judgment in favor of Koch with respect to Count II.